The Trustees of Union College, Appellants, *v.* William H. Wheeler, Executor, etc., et al., Respondents.

In 1828, A., S. and N. paid in equal portions the purchase-price for certain real estate which was conveyed to A., who, thereafter, conveyed an undivided two-thirds to S. N. quit-claimed to S., and for the consideration received back the bond of S, secured by mortgage on the premises. While A. held he executed contracts of sale to various purchasers of portions of the mortgaged premises; after the conveyance to S., and before N. quit-claimed, A. and S. jointly executed other like contracts. N., with knowledge that sales had been made, received his share of the purchase-money. All the parcels so contracted were included in the mortgage. *Held,* that as the common law of trusts was then in operation, A. and S. took the estate charged with a valid existing trust in favor of N., with legal power to sell, and their acts having been acquiesced in by N., he was bound thereby, and took his mortgage subject to all the rights and equities of the purchasers under the contracts, although he was not advised as to what particular parcels were covered by the contracts.

It *seems,* also, that an assignee of the bond and mortgage, in good faith and without notice, occupied simply the position of N., and took subject to the same rights and equities.

*Trustees of Union College* v. *Wheeler* (5 Lans., 160; 59 Barb., 585) disapproved in this particular.

A mortgage is a mere chose in action. It gives no legal estate in the land, but is simply a lien thereon, the mortgagor remaining both the legal and equitable owner of the fee.

An assignee of a bond and mortgage takes subject not only to the latent equities of the obligor and mortgagor, but of third persons having an interest in the mortgaged premises who are represented by the mortgagor.

*Moore* v. *Met. Nat. Bk.* (55 N. Y., 41); *Dillaye* v. *Com. Bk. of W.* (51 id., 345) distinguished.

The authorities as to the rights of assignees of non-negotiable choses in action collated and discussed. (See opinions of Dwight, C.)

Where contracts of sale are so executed, a subsequent mortgagee having notice of the contracts cannot release other portions of the mortgaged premises and impose the burden of the mortgage upon the parcels contracted to be sold; and if he does release portions of sufficient value to pay the mortgage, its lien upon said parcels is thereby discharged.

Actual occupancy by the purchasers under the contracts of sale is constructive notice to the mortgagee of their rights.

It *seems* that a release, executed by the mortgagee after assignment, to one

acting in good faith and without notice of the assignment is valid, and as effective to work such discharge as if executed by the assignee.

*Gillig* v. *Maass* (28 N. Y., 191) distinguished.

Neither the mortgagee nor his assignee acquires a lien upon the purchase-money unpaid upon the contracts without notice to the purchasers that such a lien is claimed.

*Governeur* v. *Lynch* (2 Paige, 300) overruled upon this point.

*Ten Eyck* v. *Sampson* (1 Sand. Ch., 244) and *F. L. and T. Co.* v. *Maltby* (8 Paige, 362) distinguished.

The recording of the mortgage does not affect the purchaser's rights in this respect, as it is only notice to subsequent purchasers or incumbrancers, and a payment pursuant to a prior executory contract is not a purchase of a new or further interest in the land.

So, also, an assignee of one of the contracts of sale, who takes subsequent to the recording of the assignment of the mortgage, is not affected thereby, but stands in the place of his assignor, and may pay to the original creditor until the assignee of the mortgage gives notice that he claims a lien on the purchase-money.

In an action to foreclose the mortgage given by S. to N., as aforesaid, brought by an assignee, the complaint set forth and recognized releases executed by N. after the assignment. *Held*, that it was immaterial whether or not they were executed with plaintiff's knowledge and assent, they having ratified them; but if the releases were invalid the premises covered by them were still subject to the mortgage, and should be sold before the parcels covered by the contracts, and it being found that they were of more value than the amount of the mortgage, a judgment declaring the lands embraced in the contracts to be discharged from the mortgage was not error.

(Argued May 21, 1874; decided September term, 1874.)

Appeal from so much of the judgment of the General Term of the Supreme Court, in the fourth judicial department, as affirms in part a judgment dismissing the plaintiff's complaint, entered on the report of the referee. (Reported below 5 Lans, 160; 59 Barb., 385.)

This action was brought to foreclose a mortgage executed by Philo Stevens to Benjamin Nott, to secure the payment of $2,800. It bears date July 18th, 1833, and was recorded August 8th, 1833. It covered, when given, four pieces of land, viz.: Three in the then village of Oswego and a large tract in the town Scriba. The mortgage was assigned by Nott to the plaintiff by an assignment, bearing date the 1st day of

July, 1834, which was recorded on the 25th day of December, 1852.

The complaint, after stating the above facts, further states that a portion of the mortgaged premises, being two of the parcels of land in Oswego, had been released from the lien of the mortgage, and as to them the plaintiff made no claim, but alleged that the residue remained subject thereto.

Several of the defendants answered and set up that they were owners of different portions of the lands lying in Scriba, which they claimed were not subject to the lien of the plaintiff's mortgage, having been discharged by the transactions referred to in the opinions.

The issues were referred to a referee, who dimisssed the plaintiff's complaint.

The General Term on appeal reversed the judgment, so far as it related to most of the mortgaged premises, but affirmed it as to the residue. The further facts are set forth at length in the opinions.

*B. B. Burt* for the appellants. Plaintiffs cannot enforce the alleged lien of the mortgage as against defendants, not having deducted the value of the released premises. (*Guion* v. *Knapp*, 6 Paige, 35 ; *Stuyvesant* v. *Hall*, 2 Barb. Ch., 151.) Assignees of contracts subsequent to the record of the mortgage are not chargeable with notice of the mortgage as subsequent purchasers. (2 Story's Eq., § 1503 *a ; Fish* v. *Potter*, 2 Keyes, 64, 80, 81 ; *Shell* v. *Tillford*, 4 N.Y. Leg. Obs., 307.) Benjamin Nott was and is estopped from claiming any interest in the lands hostile to the contracts. (*Tillman* v. *Nelson*, 27 Barb., 595, 598 ; *Mason* v. *Lord*, 40 N. Y., 476, 486, 487.) Plaintiffs took no greater title than their assignor had, and subject to every defence as against him. (*Ingraham* v. *Disbrough*, 47 N. Y., 421, 423.) The possession of the contract purchasers and their assignees under the contracts was notice to all the world of their rights and equities. (*Moyer* v. *Hinman*, 3 Kern., 180, 184; *Cook* v. *Travers*, 20 N. Y., 400 ; 2 Story's Eq. Jur., § 790 ; Will. Eq. Jur., p. 298 ; 2

Wash. on R. P. [2d ed.], 506, 507; *Matthew* v. *Andrews*, 44 Barb., 200, 206, 207; *Parsell* v. *Stryker*, 41 N.Y., 480; *Brice* v. *Brice*, 5 Barb., 533.) Plaintiffs had no lien upon the purchase-money paid upon the contracts. (*Moyer* v. *Hinman*, 13 N. Y., 180, 186.) The payment of the purchase-price to the trustee was good, and the purchaser cannot be called upon to pay a second time to a party claiming under the trustee. (*Patten* v. *Gardner*, 12 Wheat., 498; *Hadley* v. *Chafee*, 11 Paige, 245.)

*E. W. Paige* for the respondents. The defendants' possession was not sufficient to be notice to plaintiffs. (*Miles* v. *Langley*, 1 R. & M., 40; 2 id., 626; *Boggs* v. *Warner*, 6 W. & S., 469; *Campbell* v. *Breckenridge*, 8 Blackf., 471; *Stevens* v. *Wiswall*, 8 Greenl., 94; *Webster* v. *Van Steenburgh*, 46 Barb., 215; *Troup* v. *Hurlbut*, 10 id., 358; *Tuttle* v. *Jackson*, 6 Wend., 226; *McMechan* v. *Griffing*, 3 Pick., 155, 156; *Mechan* v. *Williams*, 48 Penn. St., 238; *Cook* v. *Travis*, 22 Barb., 338, 359; 20 N. Y., 402; *Buck* v. *Holloway*, 2 J. J. Marsh., 180; *Bellington* v. *Welsh*, 5 Bing., 129; *Merritt* v. *N. R. R. Co.*, 12 Barb., 608; *Bambart* v. *Greenshields*, 9 Moore P. C., 18; 28 E. L. and Eq., 82; *Flagg* v. *Mann*, 2 Sumn., 557; *Hanbury* v. *Litchfield*, 2 M. & K., 629; *Cook* v. *Travis*, 20 N. Y., 402; *Scott* v. *Gallagher*, 14 S. & R., 333; *Smith* v. *Gibson*, 15 Minn., 89; *Bogue* v. *Williams*, 48 Ill., 371; *Fassett* v. *Smith*, 23 N.Y., 258, 260; *Gt. Falls Co.* v. *Winter*, 15 N. H., 412; *Bell* v. *Twilight*, 2 Foster, 519; *Harris* v. *Arnold*, 1 R. I., 25; *Hanreck* v. *Thompson*, 9 Ala., 409; *Siter* v. *McClanachan*, 2 Grat., 280, 313.) If plaintiffs be so affected with notice that any contract shall take precedence of the mortgage, they still have a lien upon the land for the unpaid purchase-money from the date of the record of the mortgage. (*Parks* v. *Jackson*, 11 Wend., 442; *Moyer* v. *Hinman*, 17 Barb., 137; 3 Kern., 180; *Smith* v. *Gage*, 41 Barb., 190; *In re Howe*, 1 Paige, 128; 1 Edw. Ch., 553; 8 Wend., 620; 4 J. R., 216; *Ten Eyck* v. *Simpson*, 1 Sand. Ch., 244; *Gouverneur* v. *Lynch*, 2 Paige, 300; *F. L. and T. Co.* v. *Maltby*, 8 id., 362; *Finch* v. *Winchelsea*, 1.P.

Wms., 278, 379; 1 Atk. on Convey., 512; *Hampson* v. *Edelen*, 2 H. & J., 64; *Fasholt* v. *Reed*, 16 S. & R., 267; *Bush* v. *Lathrop*, 22 N. Y., 549; *Lefferson* v. *Dallas*, 20 Ohio St., 68.) Where the contracts were assigned, the record of the mortgage was notice to the assignee. (*Warner* v. *Blackman*, 36 Barb., 519; 4 Keyes, 509; *Warner* v. *Winslow*, 1 Sand. Ch., 438; 1 R. S., 762, § 37, pt. 2, chap. 3; *Hunter* v. *Walters*, L. R. [11 Eq.], 292, 301; *Colyer* v. *Finch*, 5 H. L. C., 905; *Brinckerhoff* v. *Lansing*, 4 J. Ch., 69; *Williams* v. *Birbeck*, 1 Hoff. Ch., 368; 11 Paige, 27; *Belden* v. *Meeker*, 2 Lans., 475; 47 N. Y., 312; *Campbell* v. *Veeder*, 1 Abb. Ct. App., 302; 4 Kent's Com., 174; 1 R. S., 762, §§ 37, 38.) Proof of the connection between Stevens and Aspinwall was inadmissible under section 399 of the Code. (*Buck* v. *Stanton*, 51 N. Y., 624; *Mattoon* v. *Young*, 45 id., 697; *Lyon* v. *Snyder*, 61 Barb., 172.) The proof of loss was not sufficient to let in parol proof of the contract. (*Jackson* v. *Hasbrouck*, 12 J. R., 192; *Dan* v. *Brown*, 4 Cow., 491; *Metcalf* v. *Van Benthuysen*, 3 Comst., 427; *McBurney* v. *Butler*, 18 Barb., 208.) To enforce the contracts against the mortgagee, notice to plaintiffs must be proved; notice to Nott alone was insufficient. (*Matthews* v. *Wallwyn*, 4 Ves., 125; *Phillips* v. *Bank of Lewiston*, 18 Penn. St., 394; 1 Wash. R. P., 520; *Graxdon* v. *Church*, 7 Mich., 58-62; *Pierce* v. *Faunce*, 47 Me., 514; *Bush* v. *Lathrop*, 22 N.Y., 535; *Hartley* v. *Latham*, 1 Keyes, 222; *Ingraham* v. *Disborough*, 47 N.Y., 421; *Clute* v. *Robinson*, 2 J. R., 612; 2 Vern., 692, 765; 1 Ves., 122; *Carpenter* v. *Lougan*, 16 Wall., 274; *Kennicutt* v. *Suprs.*, id., 452; *Fisher* v. *Otis*, 3 Chand., 83; *Reeves* v. *Scully*, Walk. Ch., 248; *Martineau* v. *McCollum*, 4 Chand., 154; *Croft* v. *Bunster*, 9 Wis., 510; *Taylor* v. *Page*, 6 Al., 86; *Howard* v. *Gresham*, 27 Geo., 349; *Dillaye* v. *Com. Bank*, 51 N.Y., 353; *Jackson* v. *Van Valkenburgh*, 8 Cow., 260; *Bloomer* v. *Henderson*, 8 Mich., 402; *Moore's Appeal*, 7 W. & S., 298; *Mott* v. *Clarke*, 9 Barr, 404; *Pryor* v. *Wood*, 31 Penn. St., 147; *Glidden* v. *Hunt*, 24 Pick., 225; *Pierce* v. *Faunce*, 47 Me., 514; *Richardson* v. *Brackett*, 101 Mass., 500; *Willis* v. *Valette*,

4 Met. [Ky.], 186; *Corning* v. *Murray*, 3 Barb., 654; *Cicotte* v. *Gagnier*, 2 Gibbs [Mich.], 389; *Beebe* v. *Bank of N. Y.*, 1 J. R., 573; *James* v. *Morey*, 2 Cow., 298; *Borough* v. *Moss*, 10 B. & C., 558.)  The releases by Nott cannot prejudice plaintiffs' lien.  (*Stuyvesant* v. *Hall*, 2 Barb. Ch., 155; *Cheesebrough* v. *Millard*, 1 J. Ch., 409; *Guion* v. *Knapp*, 6 Paige, 42, 43; *Wright* v. *Simpson*, 6 Ves., 734; *McLemore* v. *Powell*, 12 Wheat., 554; *Dawson* v. *Lawes*, 23 L. J. Ch. [N. S.], 434; 23 Eng. L. and Eq., 365, 374; *Page* v. *Webster*, 15 Me., 249; *Humphrey* v. *Hitt*, 6 Gratt., 509; *Freaner* v. *Zingling*, 37 Md., 496, 497; *Schroeppel* v. *Shaw*, 3 Comst., 462; *Hampton* v. *Levy*, 1 McC. Ch., 107; *Pickers* v. *Finney*, 12 S. & M., 468; *McGee* v. *Metcalf*, id., 535; *Coombs* v. *Parker*, 17 Ohio, 289; *Lang* v. *Brevard*, 3 Strobh., 59; *Philbrook* v. *McEwen*, 29 Ind., 347; *Gillig* v. *Maas*, 28 N. Y., 191; *Ely* v. *Scofield*, 35 Barb., 330; *Purdy* v. *Huntingdon*, 42 N. Y., 335; *Patty* v. *Pease*, 8 Paige, 277; *How. Ins. Co.* v. *Halsey*, 4 Seld., 273; *Stuyvesant* v. *Hall*, 2 Barb. Ch., 155; *Van Orden* v. *Johnson*, 1 McC. [N. J.], 376; *George* v. *Wood*, 9 Al., 80; *Williamson* v. *Brown*, 15 N. Y., 364, 365; *Wyatt* v. *Barwell*, 19 Ves., 436; *Bloomer* v. *Henderson*, 8 Mich., 402.)

LOTT, Ch. C.  The following facts are shown by the findings of the referee: James Mellen, prior to the 1st of October, 1828, was the owner in fee of all the lots and real estate described in the mortgage, except the lots situated in the village of Oswego, and he, by a deed of that date, conveyed all of the premises so owned by him to Chauncey B. Aspinwall, who had negotiated for the purchase thereof, but the purchase was, in fact, made for the joint benefit of himself and Philo Stevens and Benjamin Nott; each of them paid an equal amount of the purchase-price thereof, and they were each equally interested in the property.  Aspinwall, by deed bearing date January 26, 1830, conveyed an undivided two-thirds part of said land to the said Philo Stevens.  This deed was recorded in the proper county, March 1, 1830.  The consideration expressed therein was $2,000.

During the time the title of this property was in Aspinwall, portions of it were sold, and the portions so sold were held by the different purchasers under contracts executed on the part of the owners and vendors by Aspinwall alone. Sales were also made of other portions of the land after the conveyance by Aspinwall to Stevens, as above stated, and before the giving of the mortgage in question. Upon such sales, contracts were given to the purchasers respectively, executed by Aspinwall and Stevens, except in one instance, in which Aspinwall executed it alone on the part of the sellers. Some payments had been made on the contracts when the mortgage was given, and others were, also, subsequently made thereon.

Benjamin Nott, by a quit-claim deed, dated July 18, 1833, in consideration of one dollar, as expressed in the deed, conveyed to the said Stevens all the lands and premises described in the deed from Mellen to Aspinwall, and also certain village lots in Oswego, of the value of $6,000, covered by the mortgage in question, and particularly described in the complaint. The village lots, at the time of the conveyance, belonged one-third to Stevens, and two-thirds to Nott. Stevens, upon receiving the said deed, executed the said mortgage to Nott, without making any exception therefrom of the lots under contracts, as before stated. The mortgage was assigned by Nott to the plaintiff on the 1st of July, 1834, by an assignment of that date, for the consideration of $2,790.87, paid at the time, but not recorded until the 20th of December, 1852. The plaintiff, at the time of taking the assignment, had no actual knowledge or notice of the existence of these contracts, or that any part of the lands covered by the mortgage was occupied. Some of the property described in the mortgage had, before its execution, been sold, and actually conveyed to different purchasers; and no claim thereon, by virtue of the mortgage, was made at the trial. Subsequent to the assignment of the mortgage to the plaintiff, but before it was recorded, Nott, without the knowledge of the plaintiff, " so far as appeared " to the referee, released

certain portions of the mortgaged premises from the lien of the mortgage by releases given to Stevens, bearing date March 26, 1836; and he conveyed those portions, about the same time, to other parties. The property so released was of more than sufficient value to satisfy the amount due on the mortgage at the time of the release thereof, and also at the time of the trial. The validity of those releases, it may be here remarked, is acknowledged by the plaintiff in its complaint. It is therein stated that the parcels of land included therein had " been released from the lien of the said mortgage, and as to them the plaintiff makes no claim." Several of the parties holding the contracts to which I have referred, and others claiming under them, were in actual possession of the premises agreed to be sold, as above stated, at the time of the conveyance by Nott, and the execution of the mortgage to him by Stevens, and others of them, although not in actual occupation, had exercised acts of ownership thereon.

The referee also found that the evidence did not show that Nott had notice of any particular contract given by Aspinwall and Stevens for the lands therein referred to, or specific notice of any particular sale to any particular person, or, perhaps, of any sale in particular; or that he had " actual notice of the actual occupation of any of the lots or particular pieces."

He also found the following facts:

First. That Aspinwall did the principal part of the business of selling and contracting the land sold, as hereinbefore stated, and collected most of the payments made toward the land by the purchasers; and kept the account of money received and paid out on account of the lands; that Stevens occasionally collected money, but the evidence did not show that Nott ever collected or received any direct from the purchasers.

Second. That Nott was informed, from time to time, of sales of said lands being made, and contracts of sale being given therefor; and knew of sales being made, and contracts

given from time to time; and knew that Aspinwall and Stevens were. making sales thereof, and giving contracts therefor during the time said sales were being made.

That settlements were made between Aspinwall, Stevens and Nott during the time they were equally interested in said lands, and Nott received his one-third part of the money paid on account of the sale of said lands, the same being paid to him in different sums and at different times by said Aspinwall; and said Nott knew that such moneys were derived from the sale of these lands, though it did not appear that he knew from whom in particular, or on what specific lot, the same were received or paid.

Third. That there was due, or to become due, on the respective contracts outstanding, from different parties, at the date of the mortgage in question, sums amounting in the aggregate to about $735; at the time of the recording thereof a little over $600, and at the time of the assignment thereof, about $135.

Upon those facts the referee found as conclusions of law:

1st. That the releases of the two village lots in Oswego were effectual to discharge them from the lien of the mortgage.

2d. That Nott's knowledge of the fact that sales were being made and contracts given, and the receipt of money by him from time to time, knowing that it was derived from the sale of those lands, was sufficient at least to put him on inquiry; that the actual possession of parties, in some instances, bound him to constructive notice thereof, and that the plaintiff had no greater or better equity than Nott himself; that, although the notice was or might be held to be in a different transaction than that of securing the mortgage, yet the mortgage was, nevertheless, affected thereby, and that the defendants claiming through or under the contracts given prior to the mortgage, who appeared and defended, were entitled to have the property so released first credited and applied thereon before recourse could be had to their land; and as the property so released was, both at the time the

release was given and at the time of the trial, of more value than the amount due on the mortgage and the costs of the action, the plaintiff was not entitled to a judgment for a sale of their lots, but that the residue thereof, except the part released, might be sold. He thereupon ordered judgment, which was subsequently entered, dismissing the complaint as to the defendants and declaring that the mortgage as to the lands owned by them was not a lien, charge or incumbrance thereon, or any part or parcel thereof, but directing a sale of the residue of the mortgaged premises.

The General Term, on an appeal by the plaintiff from so much of the judgment as was adverse to it, affirmed that portion thereof which related to the lands of such of the purchasers from Aspinwall and Stevens as had before the mortgage was given entered into the possession of the lands purchased by them severally, improved the same and erected dwellings thereon, but reversed it and ordered a new trial as to those who had merely cut timber and sold it or had only cleared some part of it, but who had not entered into actual occupancy by residing on the lands purchased by them or receiving rents or profits thereof, except by the sale of timber, or made any other improvement than cutting and selling timber or clearing some portion of it.

There has been no appeal from the portion of the judgment of the General Term adjudging such reversal. The only question for our consideration, therefore, is whether it was erroneous, so far as it affirmed the judgment of the Special Term. We think not. Assuming that the mortgage was a valid lien on the whole of the mortgaged premises owned by the mortgagor at the time it was given, and that the rights of the several persons then holding contracts were subordinate thereto, they were entitled, on well settled principles of equity, to have the lands unsold, held by the mortgagor, applied to the payment of the mortgage, before a recourse was had to their lands. In violation of that principle Nott, the mortgagee, with notice of their rights, released two village lots in Oswego, of more than sufficient value to

satisfy the mortgage, from its lien, and thereby, instead of subjecting the land primarily liable and relieving the remainder from the burden of the mortgage, he claimed to impose the whole of it thereon. That he could not do. The effect of the release was to discharge the land of those holding contracts of purchase at the time the mortgage was given. The actual occupancy of the parties as to whose lands the judgment of the Special Term was affirmed, by a residence in dwellings erected thereon and making improvements, was constructive notice to Nott of their rights, and he was chargeable with the consequence thereof, and could not do any thing in derogation of those rights or to their prejudice. If there were any doubt or question as to the application to this case of the principle above referred to, by reason of such constructive notice, arising from such occupancy as above stated, there is another and conclusive reason why the mortgage, after the execution of the releases, should not be enforced against the lands of the respondents. Nott was part owner, in equity, of the lands contracted to be sold by Aspinwall and Stevens, and was cognizant of the fact that sales were made by them; and he in fact received his share and proportion of the money paid on the contracts. He therefore stands in the relation of a contracting party, or at least is chargeable with notice of those contracts, and bound thereby. He consequently must be considered as having knowledge or notice of them when he conveyed his interest to Stevens and took back the mortgage in question; and Stevens, from the facts found by the referee, was equally chargeable with such knowledge and notice. Therefore, he took his deed and Nott took his mortgage subject to the right of the purchasers under their contracts, and Nott could not do any thing to defeat, impair or prejudice those rights while the mortgage was owned by him; and he, certainly, could not, either before or after the release, have enforced it against their lands. The plaintiff, as his assignee, acquired no other or greater rights. It took an assignment of the mortgage, and not a conveyance of or interest in the lands that were mort-

gaged. What it acquired was a chose in action, and the interest or right of Nott therein, and the General Term, MULLIN, J., giving the opinion of the court, properly held that " if the mortgage ever became a lien on the lands under contract, it was a lien subordinate to the rights of the purchasers;" and the learned judge said that if Nott was foreclosing, he entertained no doubt but that the purchasers prior to the mortgage would have had a perfect defence to the action ; but he considered that the plaintiff, being a *bona fide* purchaser thereof, was not chargeable with the notice that Nott had of the rights and equities of the purchasers — a proposition to which I do not assent, but which I do not deem it necessary to examine, having herein before shown that the mortgage was, in fact, taken subject to their rights, and the plaintiff took no greater or other title. (See *Ingraham* v. *Disborough*, 47 N. Y., 421.) He, however, held that the plaintiff was chargeable with constructive notice of the interest which the purchasers in actual occupancy of the lands purchased by them had therein, and on that ground he held that their lands were not subject to the lien of the mortgage. This was clearly right, but was not, in my opinion, necessary to sustain the portion of the judgment appealed from. As before stated, a portion of the mortgaged premises, more than sufficient in value, was released from the lien of the mortgage. That portion was at the time owned by the mortgagor, and liable to be first sold, and its release discharged the lands of the respondents from all liability. It is no answer to this to say that the releases were given by Nott after the assignment to the plaintiff, and without its knowledge or consent at the time. It, in its complaint, in express terms, as already stated, alleges and admits that the parcels described in the releases " have been released from the lien of the said mortgage, and as to them the plaintiff makes no claim," and does not therein allege or in any manner claim that those releases, or either of them, were executed and given without its knowledge, authority or consent. The allegation of such releases is followed by the statement "that

*at the time* the said release was made as aforesaid, the plaintiff had no notice, actual or constructive, that the said Philo Stevens had conveyed or parted with his interest in any of the other parcels of real estate subject to the lien of the said mortgage." This allegation, construed in connection with that of the release by Nott of the premises released, raises a pretty strong implication that it was, in fact, made with its approbation and consent. The referee does not find that it was given without its knowledge. He qualifies his finding by saying that after the assignment, but before the recording thereof, "Nott, without the knowledge of the officers of the college, *as far as appears before me*," released the premises, and he subsequently, after finding "that none of the parties holding contracts for these lands had any knowledge of the existence of the mortgage in question at the time payments were made on said contracts by any of the parties," and that the plaintiff, or its officers, at the time the mortgage was assigned, did not have knowledge of the said contracts, etc., added as follows : "*And it does not appear* that the officers of the college had any knowledge of the execution of the two releases of the village lots, above referred to, at the time the same were executed, or that the plaintiff, or any of its officers, authorized Nott to give said releases, or either of them." It is, however, immaterial, in my view of the question, whether they were or not given with the authority of the plaintiff — the act of Nott has been ratified and adopted by it. The referee and the General Term both have held the releases to be effectual to discharge the lots embraced therein from the lien of the mortgage.

The appellant's counsel, however, claims that the releases by Nott cannot prejudice plaintiff's lien. Assuming, but not conceding, that to be so, it does not aid the plaintiff, and affords no ground for the reversal of the judgment appealed from. If the release was invalid and ineffectual as against the plaintiff, then the premises intended to be released are *still* subject to the lien of the mortgage, and were primarily liable to be sold ; and *as* the referee found that they were, at

the time he made his decision, of greater value than the amount then due on the mortgage and the costs of this action, there was no error in declaring that its lien on the lands of the respondents was discharged.

The plaintiff's counsel further claims that if the land itself could not be sold it had a lien upon the purchase-money unpaid on the contracts, from the date of the record of the mortgage. Without expressing any opinion on that question, it is sufficient to say that the complaint was not based on such claim, and relief founded on such a lien, if it existed, could not be granted on the allegations or facts stated therein.

It follows, from the views above expressed, that the portion of the judgment appealed from by the plaintiff must be affirmed, with costs.

DWIGHT, C. The facts of this case show that, on October 1st, 1828, one Mellen conveyed a large tract of land, including the premises in question, to Chauncey B. Aspinwall. The consideration for the land was paid by Aspinwall, Philo Stevens and Benjamin Nott, in equal portions, and each were equally interested in the property.

Aspinwall, by deed bearing date January 26, 1830, conveyed an undivided two-thirds part of the property to Stevens, for the consideration of $2,000.

While Aspinwall held the property he executed contracts of sale of portions of the land to a number of distinct purchasers in his own name, for the benefit of himself and Stevens and Nott, to whom he accounted from time to time for the proceeds of sales. After the conveyance to Stevens sales were made of other portions, the contracts being executed by Aspinwall and Stevens, and the proceeds being accounted for to Nott, as before.

While matters stood in this condition Nott, by a quit-claim deed, dated July 18, 1833, in consideration of one dollar, conveyed to Stevens all the lands described in the deed from Mellen to Aspinwall, and also village lots in Oswego, of which two-thirds belonged to Nott and one-third to Stevens.

Stevens, by mortgage bearing date the same day with the last mentioned deed, mortgaged to Nott the property conveyed to Aspinwall by Mellen, whether under contract or not, and also the village property above referred to, to secure the payment of $2,800, with interest, semi-annually. The mortgage was payable in five years from date, was accompanied by Stevens' bond, and duly recorded August 8, 1833.

The bond and mortgage were assigned to the plaintiff July 1, 1834, for the sum of $2,790.87, which was then paid to Nott. The execution of the assignment was proved, by a subscribing witness, December 17, 1853, and the assignment recorded on the twentieth of the same month and year.

While the mortgage, in form, covered the entire property sold to Aspinwall, yet it was conceded, on the trial, that some portions of it had been actually conveyed before the execution of the mortgage, and to this no claim was made by the plaintiff.

It will be observed, from the facts already detailed, that upward of nineteen years elapsed between the execution of the assignment and its record. Within this period, on March 28, 1836, Nott, still assuming to be the owner of the mortgage, released to Stevens some of the village lots embraced in the mortgage, who conveyed them to purchasers about the time that the releases were executed. It appeared that the lots so released were more than sufficient in value, at that time, to pay the mortgage. The purchasers under Stevens had no notice of the assignment to the plaintiff.

There is still due and unpaid on the mortgage the principal sum of $2,800, with interest from January 1st, 1864, amounting on December 3d, 1870, to $4,157.28.

The questions raised on the present appeal, under this state of facts are: First. Whether the lien of the mortgage is superior to the claims of the purchasers under the contracts. Second. If the plaintiff is bound by the contracts, whether it is not entitled to the purchase-money unpaid upon them. Third. Whether the release of the village lots by Nott does

not, as between the purchasers and the plaintiff, discharge their lots from the lien of the mortgage?

1. In considering the first question it will be necessary, at the outset, to examine the relations between Aspinwall and Nott, as well as between the latter and Stevens. When Aspinwall took the title the common law of trusts was in full operation; he undoubtedly held the property as a trustee, both for Nott and Stevens. In other words, the payment of a portion of the consideration by each of these parties, caused a trust *pro tanto* to result in their favor. This could be proved by parol evidence. (2 Washburn on Real Property, 176, par. 17, and cases cited.) When Aspinwall conveyed to Stevens he transferred an estate to him charged with a *valid existing trust*, of which Stevens had full knowledge. Stevens, according to elementary rules, became himself a trustee for Nott to the extent of the interest conveyed to him. (1 Spence's Eq. Jur., 512; Willis on Trustees, 64; 2 Washb. 178, par. 21.)

During the whole period from October 1, 1828, to the time of the execution of the mortgage, the relation of trustee and *cestui que trust* existed between Aspinwall and Nott, or Stevens and Nott. These trustees were accountable to Nott in a court of equity. They had the management of the estate, had the legal power to sell, and their acts were acquiesced in by the *cestui que trust* and ratified by the accountings held from time to time. Under these circumstances the purchasers under the contracts had an equity superior to that of Nott. At the moment when he conveyed to Stevens, they could have enforced the agreements against him, on payment of the residue of the purchase-money, and against Stevens, his successor in interest. Nott and Stevens held the legal title, as trustees for the purchasers under the contracts.

The sale by Nott to Stevens and the execution of the mortgage to the former worked no change in this state of things. At the moment of sale he was a trustee for the purchasers under the contract. By a familiar rule in the law of trusts, he could not buy or sell to the prejudice of the *cestui que*

*trusts.* His sale to Stevens, and taking back a mortgage for the purchase-money, left him precisely where he was before the transaction was entered into — still charged with the execution of the trust in favor of the purchasers under the contracts. It was, therefore, quite immaterial, as far as Nott was concerned, to show that he had constructive notice of the contracts by the possession of the purchasers. His duty toward them did not depend upon notice, but upon the inherent equities of the case. Suppose that after he had sold to Stevens he had immediately repurchased from him ; would he not have been subject to the same equities as he was liable to before the sale ? The authorities are distinct that he would.

A mortgage could give him no more rights than an absolute purchase. It is thus clear that if Nott had remained owner of the mortgage of July 18, 1833, and had sought to foreclose it, he would have been bound by the same equities as before his sale of that date, and would have been required to allow the claims of the purchasers under the contract.

Does the plaintiff occupy the position of Nott, or can it urge that it is a purchaser in good faith, and for value, and thus shut out the equities between the contractees and Nott, or is it governed by the rule that the assignee of a mortgage takes subject to the equities between the original parties ? According to the reasoning thus far, this is a case of an inherent equity as between a person having an interest in the equity of redemption and the mortgage. The mortgage, in form, covers the property claimed by the contractees ; if they do not fulfill the contract, it certainly embraces it in full. What they say to the mortgagee is this : " Owing to certain equities between us and you, it is inequitable to enforce the mortgage against property which, as a matter of law, is actually covered by it, except you respect our rights."

Is, then, the plaintiff in any better position than Nott, the mortgagee ? It is well settled that an assignee of a mortgage must take it subject to the equities attending the original transaction. If the mortgagee cannot himself enforce it, the assignee has no greater rights. The true test is to inquire

what can the mortgagee do by way of enforcement of it against the property mortgaged; what he can do the assignee can do, and no more. In *Clute* v. *Robison* (2 J. R., 612), the rule, as stated by Kent, Ch. J., is, that a mortgage is liable to the same equity in the hands of the assignee that existed against it in the hands of the obligee. (2 Vern., 692, 765; 1 Vesey, 122.) The rule is not simply that the assignee takes subject to the equities between the original parties, though that is sound law. (*Ingraham* v. *Disborough*, 47 N. Y., 421.) It goes further than this, and declares that the purchaser of a chose in action must always abide the case of the person from whom he buys. (Per Lord Thurlow, in *Davies* v. *Austen*, 1 Vesey, Jr., 247.) The reason of the rule is, that the holder of a chose in action cannot alienate any thing but the beneficial interest he possesses. It is a question of power or capacity to transfer to another, and that capacity is to be exactly measured by his own rights. (*Bebee* v. *Bank of New York*, 1 J. R., 552, per Spencer, J., and 549, per Tompkins, J.) Kent, Ch. J., in a dissenting opinion in the same case, would have confined the rule to the equities between the original parties to the contract. (Id., 573.) The opinions of Spencer and Tompkins, JJ., were, however, recognized as the correct exposition of the law in *Bush* v. *Lathrop* (22 N. Y., 535). A considerable number of authorities are cited by the plaintiff as tending to show that the assignee of a chose in action is only subject to the equities between the contractor (assignor) and the debtor, and not to the so called latent equities of third persons. Such cases as *James* v. *Morey* (2 Cowen, 298, opinion of Sutherland, J.); *Bloomer* v. *Henderson* (8 Mich., 402); *Mott* v. *Clarke* (9 Barr, 404), and others of the same class, were reviewed as to their principle or specifically in *Bush* v. *Lathrop* (22 N. Y., 535), and repudiated. The doctrine of Lord Thurlow, in England, and of Spencer and Tompkins, JJ., already considered, was thus adopted rather than that of Kent, Ch. J. The law of some of the other States undoubtedly coincides with

the views of Kent, but since the decision in *Bush* v. *Lathrop* must be regarded as without authority here.

The correct theory is well stated in 2 *Story on Equity Jurisprudence*, section 1040: "Every assignment of a chose in action is considered in equity as in its nature amounting to a declaration of trust and to an agreement to permit the assignee to make use of the name of the assignor in order to recover the debt or to reduce the property into possession." This theory would lead to the conclusion that the action by the assignee must be precisely commensurate with that of the assignor, as it must be in his name and on the supposition that, for the purposes of the action, he is still owner. The case of *Dillaye* v. *Commercial Bank of Whitehall* (51 N. Y., 345), is not opposed to this view, as the question in that case was not one of the enforcement of a mortgage, but concerned the title of the two claimants to the ownership of the mortgage itself. The point was, whether one who held a mortgage in trust with an apparently unrestricted power of disposition could transfer it free from the claims of the *cestui que trust* to a purchaser in good faith. It was held that he could. This case has no tendency to establish any right on the part of the assignee in enforcing the mortgage beyond that possessed by his assignor.

The plaintiff cites, to support his view, authorities to the effect that an assignee is a purchaser, and to the effect "that a mortgage is in form a conveyance of the land, and an assignment of it is another conveyance of the same land." These cases, which are very numerous in the law books, refer only to the position of a mortgagee or assignee in a court of law, and were decided in England and in States of the Union where more technical views of the rights of a mortgagee in a court of law prevail than in this State. They are of no force in a court of equity, in which the case at bar is assumed to be pending, for in such a tribunal a mortgage is but a chose in action and security for a debt. Reference is also made to a class of cases appearing in the law reports of a number of the States, holding, in substance, that when a

mortgage is given to secure a negotiable note, which is itself transferred before maturity for value, it is taken by the assignee free from all equities. It is argued that these authorities tend to show that the mortgage partakes of the nature of the debt, in such a sense that only the direct equities between the debtor and the creditor can be set up as against the assignee. These cases have not yet become established law in this State. (*Carpenter* v. *Longan*, 16 Wall. [U. S.], 271; *Kenicott* v. *Supervisors*, id., 452; *Taylor* v. *Page*, 6 Allen, 86; *Croft* v. *Bunster*, 9 Wis., 510.) If sound, they must be made to rest on rules of law attending the transfer of negotiable paper, and cannot be held by indirection to overthrow a rule concerning the ordinary bond and mortgage which has become fixed in our jurisprudence.

The result is that the plaintiff in the present case takes subject to the rights of the purchasers under the contracts, by reason of the equities between them and Nott and without reference to any actual or even constructive notice of such equities—as between such purchasers and the mortgagee.

2. The next question is, whether the plaintiff is entitled to the purchase-money unpaid upon the contract from the time of the execution of the mortgage, or if not from that time, from any assignment of a contract subsequent to the execution of the mortgage. It is a plain rule of equity law that as soon as a contract of this kind is made, the vendor becomes a trustee of the vendee as to the land. A subsequent purchaser or mortgagee, with notice of the contract, stands in the position of the vendor and must fulfill the trust. It is equally clear that such a person can become entitled to all future payments, if a purchaser, or to so many as to satisfy his lien, if an incumbrancer, by giving notice to the contractee. It is now well settled in this State that a judgment creditor acquiring his lien subsequent to the contract gains no lien on the payments merely by docketing his judgment. There must also be notice to bind the party holding under the contract. (*Moyer* v. *Hinman*, 3 Kern., 180.)

It is, however, claimed by the plaintiff that the rule applied to a judgment creditor in *Moyer* v. *Hinman* does not extend to a mortgagee, and that there is a distinction to be taken between the general lien of a judgment creditor and the specific lien of a mortgagee. To establish this point are cited *Gouverneur* v. *Lynch* (2 Paige, 300); *Ten Eick* v. *Simpson* (1 Sandf. Ch., 244); *Farmers' Loan and Trust Company* v. *Maltby* (8 Paige, 362). The plaintiff would deduce from these cases the proposition that a regular mortgage as distinguished from an equitable one binds the unpaid purchase-money on a contract of sale without notice to the purchaser. Only the first of these cases lends any support to this doctrine. In *Ten Eick* v. *Simpson* the purchaser under the contract had notice. In *Farmers' Loan and Trust Company* v. *Maltby* the principle could not be applied, as the mortgage was equitable. *Gouverneur* v. *Lynch* is briefly reported, and no reasons are given for a somewhat obscure opinion that the unpaid purchase-money would be bound from the registry of the mortgage. The chancellor appears to have been at that time influenced by the notion, which he subsequently wholly renounced, that the registry of the mortgage was constructive notice to the holder of the contract. He appears to have had a like idea in *Guion* v. *Knapp* (6 Paige, 42, 43), which seemed so strange to Vice Chancellor SANDFORD, who, when at the bar, had argued the cause, that he attempted to explain it away in *Stuyvesant* v. *Hone* (1 Sandf. Ch., 426). Whatever his theory may have been, so far as it holds that the unpaid purchase-money is bound by the registry of a subsequent mortgage without notice, it is radically unsound in principle and should be overruled. The rule as there laid down would make it necessary, on each payment made by a person holding under a contract, to examine the records, to see whether any transfers had in the meantime taken place. Such a rule would be to the last degree inconvenient. It is unsound in principle. The correct doctrine is that stated by DENIO, J., in *Moyer* v. *Hinman*, already cited. Payments by

the vendee, pursuant to an executory contract, are not to be considered as a fresh dealing with the vendor respecting the land, but are to be referred to the original contract. (P. 186.) That case did not call for a decision of the question whether, if a purchaser from the vendor had obtained a conveyance before a payment was made, he would have a lien upon such payment by mere force of the conveyance, and without any notice. Denio, J., expressed a clear and distinct individual opinion upon the point in the following terms : " Individually, I am of opinion that a vendee in possession under such a contract may safely continue to pay to the vendor until he has notice that some other person has acquired an interest in the land, or in the contract. If this is not so the vendor may, in any case, make a secret conveyance of the land, and continue to receive the purchase-money from the vendee ; and the latter will be without remedy if the vendor be insolvent. The recording of the conveyance would make no difference in the principle, for this is only constructive notice to subsequent purchasers and incumbrancers, and as we have seen, a payment pursuant to a prior executory contract is not to be regarded as a purchase of a new or further interest in the land." (Pp. 187, 188.) He adds that the solution of the whole subject is to be sought in the doctrine of equitable conversion, whereby the vendor becomes a trustee for the vendee, and the vendee the trustee of the vendor for the unpaid purchase-money. The vendee continues to hold that position until he is notified that the trust relation between him and the vendor is at an end by the substitution of another in his place.

This is deemed to be a correct exposition of the law, and is adopted in the present case. The same rule must be applied to assignees of the purchasers under a contract as to the purchasers themselves. The argument in the two cases is precisely the same. An assignee acquires all the rights of the purchaser, not as new rights, but as transferee of those already existing. The arguments, from inconvenience growing out of the necessity of repeated searches as to changes in the vendor's title, are equally cogent. For

both purchasers and their assignees there is but one rule: they can be bound only by notice, and record of a transfer is not notice.

3. The final inquiry is as to the effect of the releases. As this question is actually in the case, it is proper to decide it, although the views already expressed, if sound, would dispose of the cause in favor of the defendants.

The plaintiff took an assignment of his mortgage July 1st, 1834. It was not recorded until 1853. In March, 1835, Nott, his assignor, released from the lien of the mortgage certain village lots, which were primarily liable to pay this mortgage, thus casting the burden of it on those which were secondarily liable. This was done by the releaser with knowledge of the equities of the defendants, and the lots were of more than sufficient value to pay the mortgage. It needs no reference to authorities to prove that if Nott had been owner of the mortgage at the time of the release, the defendants would have had a right to insist that the value of the lots should be applied to the reduction of the mortgage, and this, of course, would have extinguished it as to them. It is said, however, on the part of the plaintiff, that it is not liable for the act of Nott, as he was not, at the time, owner. It is argued that this subject is governed by the law of principal and surety, and that the surety will not be discharged by the mere omission on the part of the creditor to do an act such as recording the assignment, unless he is both bound by law to do it and is required by the surety to perform it. (*Schroeppell* v. *Shaw*, 3 Comst., 462, and other cases cited.)

These cases are, undoubtedly, good law, but they do not govern the present case. The plaintiff, until he records his assignment or gives notice of it, does not occupy the position of a creditor toward a principal debtor and a surety.

This transaction, occurring in 1835, is governed by the law of equitable assignments. The assignee was a mere *cestui que trust*, and the assignor held the apparent title to the mortgage; he had a complete right to deal with it toward all persons except the assignee, unless they had notice. This whole

matter must be regarded as though the plaintiff had no participation in it, or rather, as though it was identified with the acts of its' trustee. It is well settled that payments made to the mortgagee without notice of the assignment, are to be credited on the mortgage. (*Mitchell* v. *Burnham*, 44 Maine, 303; *Bank* v. *Anderson*, 14 Iowa, 544; *Johnson* v. *Carpenter*, 7 Minn., 176; *James* v. *Johnson*, 6 J. Ch., 427; S. C., 2 Cowen, 246; *Williams* v. *Sorrell*, 4 Vesey, 389; *N. Y. Life Ins. and Trust Co.* v. *Smith*, 2 Barb. Ch., 82.) A discharge from him under such circumstances would also be valid, when granted to one acting in good faith and for value, for that is no more than saying that complete payment will be recognized. The case is that of an apparent owner being allowed by the real owner to deal with third persons on the faith that he had the title. Notice to him of the equities between the parties must be deemed to be notice to the assignee, as he represents him. If one of two innocent persons must suffer, that one must sustain the loss who has put it in the power of an apparent owner to commit the wrong. It would be extremely severe on innocent parties, holding under these contracts, to maintain that a mortgagee suffered by an assignee to act as owner, might, knowingly, violate all equities in their favor with entire impunity to the assignee, who might, by a slight act of diligence on his part, have prevented the commission of the wrongful act. (1 Story's Eq. Jur., 390; *James* v. *Johnson*, 6 J. Ch., 417; *N. Y. Life Ins. and Trust Co.* v. *Smith*, 2 Barb. Ch., 82.) *Gillig* v. *Maass* (28 N. Y., 191), is not applicable to this case. There the question was as to the effect of a failure to record the assignment of a first mortgage upon the rights of a second mortgagee. It was held that such failure was no fraud upon him, nor did it estop the assignee from asserting his claim against the second mortgage, although the holder of the latter had taken it under an agreement with the first mortgagee that his mortgage should be postponed. Here the transactions were between holders of distinct mortgages. The owner of the first was under no duty to a second, and could

not assume that by leaving the title in the original mortgagee he would commit a fraud toward a person who then had no lien. The law of recording assignments did not protect the second mortgagee, as that refers to successive assignments of the same mortgage. But in the case at bar the question was as to the dealing by the mortgagee with the debt which belonged to him and to the security appertaining to it. Before the assignment he had complete power to discharge the debt, as well as the mortgage, either in part or absolutely. That power must be presumed to continue until notice to the contrary. By means of it he may violate the equities of third parties, and his conduct may so react on his own interests as to destroy his lien. If an assignee sees fit to leave him this apparent authority he cannot, as has been already shown, complain of its exercise as to persons acting in good faith, but must be regarded as represented by and identified with the mortgagee. (*Bank, etc.,* v. *Anderson,* 14 Iowa, 544.)

The judgment of the court below should be affirmed.

All concur.

Judgment affirmed.

A motion having been made for reargument, the following opinion was given, on denying the motion.

DWIGHT, C. The plaintiff in this cause moves for a reargument on three grounds:

First. That this court erred in holding that the plaintiff took the same position in respect to the mortgage which was the subject of foreclosure in the present action as its assignor, Nott, the mortgagee. Second. That the court should have held, that where the contracts owned by the respondents were assigned, subsequent to the record of the mortgage, the plaintiff has a lien for the purchase-money unpaid at the time of such assignment. Third. That the court committed another error in holding that after Nott had made the assignment, and continued the apparent owner, the assignment being unre-

corded, and the respondents having no notice of such assignment, his release from the lien of the mortgage of certain portions of the premises which were primarily liable to pay the debt, was binding on the plaintiff and so discharged the respondents.

Before considering the first proposition, it will be well to recall the exact relations of the parties. Nott held a mortgage upon certain lands to which the mortgagor held the legal title, but which in part had been sold by a valid contract to some of the defendants. The validity of the contract is undisputed, as is also the fact that Nott, the mortgagee, had full notice of the equities of those defendants, and was bound in equity to recognize them.

Starting with this proposition, the counsel for the plaintiff maintains that the plaintiff, if considered as a purchaser of a chose in action without notice, is not bound to recognize the equities to which Nott would have been subject, and again, that it is a purchaser of the *legal title* to the land, and that it can invoke the rule that the honest purchaser of land for a valuable consideration can shut out any equities which might have existed between the mortgagor as well those whom he represented and the mortgagee.

In urging the first branch of this proposition, he calls our attention to the supposed fact that the case of *Bush* v. *Lathrop* (22 N. Y., 535), and cited as authority in one of the opinions disposing of this cause, has been overruled, and with it, that the doctrine on which we relied has fallen. This, however, is an incorrect assumption, for that case has not been overruled as a whole, but only as to one proposition maintained in it. (See *Moore* v. *Metropolitan Bk.*, 55 N. Y., 41.) It is there stated that several propositions in *Bush* v. *Lathrop* were decided " with perfect accuracy." The special point in respect to which there is a conflict between the two cases is, whether an *assignor* of a chose in action can set up any equities affecting the title between himself and his assignee, in an action brought by a second assignee. There was no question whatever as to the equities growing out of the chose in action itself,

as between the original parties to it or an assignee of the creditor. On that point the court was careful to avoid all misconstruction in using the following language: " The counsel" (for the defendant) further insists that to apply the same rule (of estoppel) " to non-negotiable choses in action will in effect make them negotiable. Not at all. No one pretends but that the purchaser *will take the former, subject to all defences, valid as to the original parties*, nor that the ·mere· possession is any more evidence of title in the possessor than is that of a horse. In both respects, the difference between these and negotiable instruments is vital." (P. 48.) The court is also careful, on pages 49, 50 of ·the report, to preserve the force of the cases, decided by the present Court of Appeals, which have followed *Bush* v. *Lathrop* in the respect referred to — cases of which *Schafer* v. *Reilly* (50 N. Y., 61), is one, and bears closely upon the present discussion. The point in *Moore* v. *Metropolitan Bank* is simply whether the law of estoppel is applicable on the question of title as between a first assignee and a remote purchaser of a non-negotiable chose in action. It is held that it is. The rule that the chose in action *itself* is open to all defences growing out of the original transaction, in the hands of any assignee no matter how remote, remains unshaken, and must continue so until elementary rules of law are overthrown.

The rule laid down by us in the case at bar is distinctly stated and affirmed in *Schafer* v. *Reilly* (50 N. Y., 61). It is there said that one who takes an assignment of a mortgage, takes it subject not only to any latent equities that exist in favor of the mortgagor, but also subject to the like equities in favor of third persons. This case emphatically approves of *Bush* v. *Lathrop,* so far as it holds this point, and declares its doctrine to be settled law. None of the cases, we repeat, in which the present Court of Appeals have followed that case, are to be regarded as overruled by *Moore* v. *Metropolitan Bank* (*supra*).

It must accordingly be held to be still the law of this

State, that the purchaser of a non-negotiable chose in action, secured by a mortgage, takes it subject to the latent equities not only of the mortgagor but of third persons.

The counsel of the plaintiff, however, maintains that if it be conceded that this doctrine applies to the *debt*, it does not apply to the *mortgage*. His argument is, that the mortgage itself creates a *legal estate* in the land, and that so far as the land is concerned, an assignee of a mortgage is a purchaser of the legal estate for a valuable consideration, and entitled to exclude the equities. There is thus, according to this proposition, one rule for the land and another for the debt. If the debt were collected by action for its amount the equities would be let in; if it were collected by foreclosure of the mortgage they would be shut out. This, if true, is certainly an extraordinary proposition. It is very comprehensive in its nature, for it would exclude the equities of the mortgagor as well as the latent equities of third persons. Under our compound system of foreclosure and of obtaining a personal judgment for the deficiency, there would be one rule for the first branch of the case and an entirely different one for the last.

None of the cases cited by the counsel, on this motion for reargument, sustain his proposition as being part of our law. They have all been examined, and it is unnecessary to consider them in detail. The point is really decided against him in *Schafer* v. *Reilly* (*supra*). The contest in that case concerned the right to surplus moneys after a foreclosure, and was in substance a question as to the title to land, the money standing, under the doctrine of equitable conversion, in the place of land. It appeared that there was a second mortgage, of a fictitious nature, made by one John Reilly to Peter Reilly, on which nothing had been advanced, and which was of course incapable of enforcement by Peter. This was assigned to one Catherine M. Burchard, who paid a valuable consideration, acting in good faith, and upon an affidavit by the mortgagor, that Peter Reilly had advanced to him the whole amount of the principal without abatement,

that the whole sum remained unpaid, and that there was no off-set, defence or counter-claim to the mortgage. The mortgage was dated and executed anterior to the claim of one Griffin, who had acquired, subsequently, a mechanic's lien upon the land, but before Mrs. Burchard became assignee. Of his rights at that time she was ignorant. The question was, who had, under these circumstances, the better right to the surplus moneys, considered as land. The court held that, notwithstanding the mortgage was, on its face, executed prior to the mechanic's lien, it might be shown by Griffin that his lien was in existence when Mrs. Burchard advanced her money, and that his right could not be affected by the mortgage. The court there broadly applied the rule, that if Griffin's claim was an equitable one and latent, it could still be set up by him against the assignee. The estoppel against John Reilly, caused by his affidavit, had no effect upon the rights of Griffin. The court rested this decision on the ground that though Griffin's right might be a latent equity, yet the assignee must take the mortgage considered as an interest in the land, and not merely the debt, subject to the equity. The same class of cases that were relied upon by the plaintiff's counsel in the argument of the present motion were cited to the court, as showing that the assignee of the mortgage was a purchaser for value. Their application to the subject in hand was denied, and the rule of Lord THURLOW, in *Davies* v. *Austen* (1 Ves., 247), was pronounced to be the principle governing the case. " A purchaser of a chose in action must always abide by the case of the person from whom he buys." (*Schafer* v. *Reilly*, 50 N. Y., 67, 68.) This was the precise ground on which the case at bar was rested.

The plaintiff is mistaken in the supposition that the present case is one merely of *notice* of equitable rights on the part of third parties to Nott, the mortgagee, and, accordingly, that it is not bound by the notice under the ordinary doctrines applied to the purchaser in good faith, and for a valuable consideration, acquiring title to lands. On the

contrary, the difficulty is that Nott took his mortgage, subject to the older and better title of the contractees. To their estate his mortgage *never attached* in equity. The land belonged to them in equity, and the most that Nott could acquire under any circumstances, as against them, was a lien for the unpaid purchase-money. This is not an interest in the land but only in the money, and to be obtained by an assignee of Nott in no manner, except by due notice of the mortgage and assignment given to the contractees. The plaintiff simply acquired Nott's rights, and stood in his place according to *Schafer* v. *Reilly* (*supra*). (See, also, *Andrews* v. *Torrey*, 1 McCarter [N. J.], 355.) The cases of *Jackson* v. *Van Valkenburgh* (8 Cow., 260); *Jackson* v. *Henry* (10 J. R., 185); *Varick* v. *Briggs* (6 Paige, 323); *Fort* v. *Burch* (5 Den., 187), and others cited by the appellant, have no application to the case at bar. Those and others of the same nature are either cases of title obtained by fraud, or involve the effect of notice under the recording acts, or are instances of mortgages accompanying negotiable notes, and declared to partake of the character of the note. They are noticed and distinguished in *Schafer* v. *Reilly* (*supra*), and it is unnecessary to spend time upon them. It should be added that, under the rules of equity jurisprudence, it is essential that one who claims to exclude an earlier equity must show that he is not only a purchaser, but has acquired *the legal estate.* What evidence was there, in the case at bar, that the plaintiff had acquired the legal estate? The complaint merely alleges an assignment of the debt and mortgage in writing. The referee only finds an assignment in writing. There is not a word anywhere concerning the acquisition of the mortgage by a deed or other instrument under seal. If the mortgagee had the " *legal* " estate, he did not transfer it by such an instrument as the law requires to transfer a freehold estate in land. The plaintiff was, undoubtedly, the equitable owner, by force of the assignment of the bond and the mortgage accompanying it, but that was not enough. The legal title must pass. (*Pea-*

*body* v. *Fenton*, 3 Barb. Ch., 451.)   The authorities, to the effect that a *deed* or other mode of *conveyance* is necessary to pass the legal estate, strongly preponderate.   (*Den* v. *Dimon*, 5 Halst. [N. J.], 156 ; *Warden* v. *Adams*, 15 Mass., 233 ; *Jackson* v. *Myers*, 11 Wend., 533, 539 ; *Morrison* v. *Mendenhall*, 18 Minn., 232 ; *Cottrell* v. *Adams*, 2 Bissell, 351 ; *Olds* v. *Cummings*, 31 Ill., 188 ; *Partridge* v. *Partridge*, 38 Penn. St., 78 ; *Graham* v. *Newman*, 21 Ala., 497 ; *Lyford* v. *Ross*, 33 Me., 197 , *Smith* v. *Kelley*, 27 id., 237 ; *Givan* v. *Tout*, 7 Blackf., 210 ; 2 Washburn on Real Property [3d ed.], page 113, paragraphs 12 and 16, and cases cited.)   Such cases as *Green* v. *Hart* (1 J. R., 590) ; *Jackson* v. *Blodget* ( 5 Cow., 202), and *Jackson* v. *Willard* (4 J. R., 43), do not affect this question, as the matter of passing the *legal* title to the mortgage was not in controversy.   *Johnson* v. *Hart* (3 J. Cas., 322), only decides that by the transfer of the debt an equitable title to the mortgage passes.

It is, however, not our intention to hold that the legal estate, under the present law of this State, ever does or can pass from the mortgagee to the assignee.   On the other hand, it is now settled law that the mortgage is but a lien upon the land.   The mortgagor, both in law and equity, is regarded as the owner of the fee, and the mortgage is a mere chose in action, a security of a personal nature.   An assignment of a mortgage, in this view, cannot pass the title.   (*Jackson* v. *Myers*, 11 Wend., 533, 539 ; *Kortright* v. *Cady*, 21 N. Y., 343 ; *Trimm* v. *Marsh*, 54 id., 599, 604 ; *Stoddard* v. *Hart*, 23 id., 559, 560 ; *Power* v. *Lester*, id., 527.)   Rules, owing their existence to a contrast between law and equity, and giving the later holder of a legal title a preference over an earlier holder of an equitable title, are not to be applied to a state of the law so entirely different from that which prevailed when the law of mortgages first originated.   In other words, the power of a vendee of land to convey to a second purchaser, so as to shut out the equities between himself and the original vendor, is not to be referred to for the pur-

pose of ascertaining the capacity of a mortgagee when he makes an assignment of the mortgage to shut out the equities between himself and the mortgagor, and those whom the mortgagor represents. If that rule were ever a part of the law of mortgages, the development of that branch of jurisprudence in this State demands that it should be discarded.

Second. There is no good reason why the second point raised by the plaintiff's counsel should be again argued before us. He has shown no good reason for the proposition that conceding, as we now must, that the plaintiff simply acquired Nott's rights, the assignees of the purchasers under the contracts were bound to take notice of the assignment of the mortgage to the plaintiff after its record. His sole argument is by way of analogy to the case of a conveyance of land and a mortgage back for the purchase-money. The rule that, when a mortgagor subsequently conveys, the record of the assignment of the mortgage is notice to the purchaser from the mortgagor, is claimed, by this asserted analogy, to be applicable to this case.

This is but a new instance of the wisdom of Lord MANSFIELD's aphorism, that "nothing is so apt to confound as a simile." There is no real analogy between the two cases. In the case of the mortgage for the purchase-money, the mortgagor has the legal title, conferring upon him all the rights of owner, subject to the lien of the mortgage. He may bring ejectment, maintain trespass, and generally appear to the world in the character of proprietor. When a purchaser takes such a title, good policy dictates that he should be required to examine the record, and if he fail to do so, he should sustain the consequences of his neglect. There is no such policy in the case of a mere assignment of a contract. The interest of the contractee is but temporary and provisional, and preparatory to the acquisition of the formal title. There is no good reason why the policy of the recording act should be extended by judicial construction to such cases. It would be an intolerable burden if on every assignment of a contract

it should be necessary to search the title. It might as well be said that the assignee of the vendor should inquire whether the contractor had made an assignment, as the lien of the respective parties is mutual. We shall not be the first to announce a rule so inconvenient in practice, so burdensome in its effects, and so contrary, as we think, to the general understanding of the profession.

The sole question which such a contractee has to ask is, to whom shall I pay my debt? When he assigns his contract, the assignee has to settle the same proposition. He should be placed, accordingly, in the same position as any other debtor whose indebtedness has been assigned. Let the purchaser of the vendor's rights give notice of his claim. Until that is done, the debtor or his assignee may assume that the former state of things continues, and may pay the original creditor (vendor). It is unnecessary to pursue this subject further, as we should but again go over ground that has been sufficiently reviewed in our former opinions.

Third. If the views already stated are sound, they are fatal to the plaintiff's case; and it would be of no value to grant a reargument, if the judgment should be necessarily affirmed for these reasons, even though we may have committed an error as to the effect of the releases. It is, however, proper to say that nothing has been urged by the plaintiff tending to raise any question as to the soundness of the opinions already given upon this branch of the case.

The counsel for the plaintiff is mistaken in the supposition that our opinion on this question had any thing to do with the recording acts. It was rested solely on the general doctrines of law, as modified by equity, and would have been equally applicable in England, where no general recording act prevails. The point of our decision was, that when the plaintiff took its assignment it stood in the exact position of Nott, and was bound by his acts toward the property embraced within the mortgage.

The counsel admits that if an assignment is made, and no notice is given to the mortgagor, any payments that he may

make to the mortgagee must be credited to his account; and, by parity of reasoning, he must concede that any dealings transacted between them in good faith must be upheld. He, however, insists that this does not apply to any dealings by the mortgagee after the assignment with third persons, and that the purchasers are third persons. With due deference, this is begging the whole question. These purchasers under the contracts are, in a broad sense, the mortgagors. The mortgage, by a rule of law, was made to include them, because it was executed by one who held the legal title, *in trust*, for them. It was a mortgage by a trustee of a formal trust, binding on them because he was their representative, as the holder of the legal title, and, in all good sense and logic, so far as it binds them, they are the mortgagors. When Nott prejudiced their interests, by releasing a portion of the land, which ought primarily to pay the debt, from the lien of the mortgage, he did an act injurious to them as mortgagors. The plaintiff, by not giving notice to the purchasers of its rights, left it in the power of Nott to deal with them as though he were still owner; and it must accordingly be bound by his *release, in the same way as it would be bound to credit payments* to the purchasers which they had made, in good faith, to Nott. This same point was distinctly presented in *Stocks* v. *Dobson* (4 De G., M. &. G., 11). In this case, an assignee of a judgment gave no notice of the assignment to the debtor, and it did not appear that he had the means of ascertaining his residence. The assignor then, by reason of some arrangements with the debtor, released to him all claims, including this judgment. The release was held to be binding upon the assignor. The court, after stating the rule that payments made to the assignor, under such circumstances, are binding upon the assignee, said : " Thus the case stands considered as a question of payment. \* \* \* I see no substantial ground of distinction between actual payment and a release to the debtor, founded upon a fair and *bona fide* arrangement." (P. 13 ; see, also, *Loomis* v. *Loomis, supra; Jones* v. *Smith,* 22 Mich., 360 ; *Huntington* v. *Potter,* 32

Barb., 300; *Hodgdon* v. *Naglee*, 5 Watts & Serg., 217; *Ryal* v. *Rowles*, 1 Ves. Sen., 267.) The principle of this rule must necessarily extend to all dealings and acts, on the part of the assignor, toward those persons whose rights and interest are embraced within the mortgage. It is not contended here that the doctrine will extend to third persons in the correct sense of that expression ; that is, to persons whose rights are external to the mortgage; but its scope is extensive enough to include all those persons who either executed the mortgage directly, by their own act, or indirectly, through trustees holding the legal title. The interests of such persons are within the purview of the mortgage; they are not junior incumbrancers, like younger mortgagees or judgment creditors. They are, in the broad sense of the term, mortgagors, and fall within the principle that, until notice of the assignment, the rights and interests of the mortgagor are in no wise affected by it. (*Loomis* v. *Loomis*, 26 Vt., 198 ; *Comstock* v. *Farnum*, 2 Mass., 96 ; *Martin* v. *Sedgwick*, 9 Beav., 333; *Thompson* v. *Speirs*, 13 Sim., 469 ; *Waldron* v. *Sloper*, 1 Drew., 193 ; *Ex parte Boulton*, 1 De G. & J., 163 ; *Foster* v. *Cockerell*, 3 C. & F., 456.)

Some explanation should be made of our reasons for so extended a discussion of the grounds for denying a motion for reargument. The whole subject was discussed at length by the appellant's counsel, in making his motion ; and, though that discussion may not have been, in all respects, regular, in view of the earnestness with which our former opinions were combated, and the importance of the questions involved, we have thought it proper to restate our conclusions in the form of a specific consideration of his argument.

The motion for reargument is denied.

All concur.

Motion denied.