## LORD v. C. & J. H. UNDERDUNCK.

Where a vendee of real estate, under a parol contract, relies upon his entry into possession, to take it out of the statute of frauds, his entry must be connected with and referrible to the contract, and it must clearly appear, that he took the possession by the known permission of the vendor.

The heirs of a vendee, who had a parol contract for 800 acres of land, and had paid the whole price, sold and conveyed 100 acres of the same in fee to the complainant: *Held*, that he could not file a bill against the heirs of the vendor, to compel them to execute to him a conveyance for the 100 acres.

If he had become the purchaser of the whole 800 acres from the vendee's heirs, the latter would have been necessary parties, in a suit by him against the vendor to obtain a deed.

Where the heirs of a vendee, who had a parol contract for land, of which he died in possession after paying the price, executed a power authorizing their attorney to sell all the lands whereof they became *seised* on their father's death: *Held*, that the power did not authorize the sale of the land thus held under the contract.   The *seisin* of such land continues in the vendor.

The answer set up a want of parties, which point was sustained; and it was doubtful whether any addition of parties would render the suit available.   The court refused to permit the bill to stand over to add such parties.

Albany, July 19 ; August 7, 1843.

The bill was filed by Jacob A. Lord, to compel the defendants to execute to him a deed of 100 acres of land, in the town of Hancock, in the county of Delaware ; and to restrain an action of ejectment for its recovery, which they had commenced against him in October, 1840.

Previous to the third of October, 1837, James Underdunck, the father of the defendants, being the owner of an undivided interest in mills, &c., in Hancock, and the owner in severalty, of a tract of 800 acres in the same town, agreed by parol, to

sell and convey the same to Miles Smith, for the price of $5300. Mr. U. resided at Somerville, and Smith at New-Brunswick, in the State of New-Jersey. At the request of Underdunck, Judge Nevius, of New-Brunswick, prepared a deed from him to Smith, and the parties met at that place on the 3d day of October, 1837, to perform the agreement. It was then discovered that Mr. U. had omitted to furnish to Judge N. a description of the 800 acres, and that the same were, therefore, not included in the deed which he had prepared. At the suggestion of Judge Nevius, and to avoid a second draft of the deed, which, in relation to the mills, &c., was very long, the parties proceeded to close the transaction, as far as it could be closed at that time. Underdunck executed the deed which had been prepared, and promised to procure and furnish to Judge Nevius, a description of the 800 acres, to enable him to draw a deed of the same, which Mr. U. was to execute subsequently ; and Smith paid the whole consideration, $5300, in two bonds to Underdunck. The latter died intestate within a month after this occurrence, without having executed the deed of the 800 acres, or done any act towards it. The defendants are his heirs at law, and James Henry Underdunck is an infant.

Miles Smith died in June, 1838, leaving several children and heirs at law. In September, 1839, one of his sons, Miles C. Smith, in his own behalf, and assuming to act as the attorney of six other heirs of his father, under a sealed authority from them, conveyed the land in question, being 100 acres of the 800 acre tract, to the complainant, in fee with warranty. The complainant immediately entered into possession of his purchase.

*A. J. Parker,* for the complainant.

*N. K. Wheeler,* for the defendants.

The Assistant Vice-Chancellor.—It is my present impression, that the case is to be considered as standing upon the original agreement, made by James Underdunck with Miles Smith, for the sale *of all his property in Hancock,* for the

gross sum of $5300 ; and that the assent of Smith to receive two deeds instead of one, did not form a new contract, nor essentially vary the one previously made. In this view, there was a sufficient part performance of the agreement to take the case out of the statute of frauds. The whole consideration was paid, and the principal portion of the property was conveyed and went into the possession of the vendee. I felt serious doubts at the hearing, whether the contract could be relieved from the force of the statute, if there were no part performance except that derived from the alleged change of possession of the 800 acre tract. There was very little improvement or cultivation on the 800 acres, and its possession was not marked by any distinct or obvious features. Although the Smiths were in possession soon after October, 1837, by the witness Weston, who was left in possession by Underdunck; yet it is exceedingly doubtful upon the testimony, whether there was any change of possession in his life-time, or if there were, that it was made by his direction or assent. The possession of the vendee, to enable this court to decree performance of a parol agreement, must be connected with the agreement, and referrible to it; and it must clearly appear to have been taken by the known permission of the vendor. See *Givens* v. *Calder*, (2 Dessauss. Eq. R. 171. 190 ;) *Thompson* v. *Scott*, (1 McCord's Ch. R. 39.)(*a*)

Assuming, however, that the heirs of Miles Smith were entitled to compel a specific performance of this agreement, has the complainant any claim for the relief which he seeks by his bill ?

1. As to his title to the 100 acres, part of the tract of 800 acres, the defendant, Catalina U., having admitted the conveyance as set forth in the bill, she can raise no question upon the power of attorney under which Miles C. Smith executed that conveyance. It is otherwise as to the infant—and against him the complainant's whole case must be proved. The power of attorney recites the names of *eight heirs* of Miles Smith, one of whom, Digby B. Smith, did not execute

(*a*) Also *Jervis* v. *Smith*, (1 Hoff. Ch. R. 470.)

the power, and his name does not appear in the subsequent deed, nor is it mentioned in the bill. In fact, I believe there is no proof made as to who were the heirs of Miles Smith. The power recites, that upon the death of Miles Smith, the constituents and Miles C. Smith became *seised of a certain tract* in Hancock, &c., and then authorizes Miles C. to grant, bargain and sell all the lands, &c., whereof they are *seised* as aforesaid.

The *seisin* of the lands in question, was clearly in the defendants in this suit. In equity, it is true, they are deemed to stand *seised* of it, for the benefit of the heirs of Smith, or *in trust* for them. (2 Story's Eq. 98, § 790.) But it seems to be an entire confusion of terms to say, that the beneficiaries of this mere equity, are *seised of the land.* (See, per Lord Mansfield, in *Taylor* v. *Horde*, 1 Burr. 60. 107. *Kennedy* v. *Wood*, 20 Wend. 230.) I need not determine whether the attorney's mode of executing the deed, by signing his name, Miles C. Smith, "and as attorney for H. Smith, &c.," naming his constituents, and affixing one seal, made it the deed of the constituents. See *Townsend* v. *Corning*, (23 Wend. 435 ;) *Jones' devisees* v. *Carter*, (4 Hen. & Mun. 184.) On the ground that they were not seised, I am satisfied that the conveyance to the complainant vested in him the equitable interest of Miles C. Smith only.

As against the infant, the complainant, therefore, comes into this court, requiring him to execute a deed to the complainant, for one seventh, (or one eighth, if Digby B. Smith was an heir,) of one hundred acres, parcel of eight hundred acres, which the defendant's father contracted to Miles Smith, and seeking no relief in respect of the remainder. As against the adult defendant, the case differs only in this, that the complainant shows himself vested with all Miles Smith's right to the 100 acres.

I am clearly of the opinion, that such a bill cannot be maintained. If the complainant had become the purchaser of the whole 800 acres from the Smiths, and had sought to enforce the contract in question, the heirs of Smith would have been necessary parties. *Hooper* v. *Donnelly*, (3 Hen. & Mun. 316.)

*Duvall* v. *Bibb*, (4 Id. 113.)   *Van Meeter* v. *Williams' Admin'rs.* (1 J. J. Marsh. 561;) Edwards on Parties, 86, § 32. Whether the administrator of Underdunck should also be a party in such a case, I need not now determine.  See *Roberts* v. *Marchant*, (1 Hare's R. 547.)  But it appears to me, that neither precedent or reason sanctions a proceeding by which, on a single indivisible contract, for the sale of 800 acres of land, the vendor may be subjected to an indefinite number of suits for specific performance, by as many persons as shall happen to become sub-contractors under the vendee, for distinct portions of the whole 800 acres, be it one acre or one hundred. If the complainant can maintain this bill, every grantee of each 100 acres from the Smiths may do the same.  And on the same principle, each heir of Smith could have maintained a separate bill against the heirs of Underdunck, in respect of the undivided seventh part, which each took by descent. This court would make an entirely new contract for these parties, if this bill is sustained.  Underdunck agreed to convey 800 acres to Smith, but he did not agree to convey 100 acres to the complainant and 700 acres to Smith, or to some other person as his asignee.  When the vendee has transferred his whole interest, the court, in a suit by his assignee, *in which the vendee is a party*, will direct the vendor to convey to the assignee.  In that case the vendee assents, and it matters not to the vendor, to which of the two he shall convey the entirety. But the court, so far as I can discover on a careful investigation, has gone no farther.  And I am sure that it ought not to compel a vendor to undergo a litigation with a voluntary assignee of the purchaser, one who is not privy to the contract, and who has acquired only one eighth, or a far less proportion, of the interest of the purchaser.(*a*)

I am reluctant to turn out of court a complainant who has any merits, but it is doubtful whether any addition of parties would aid him, were the cause to stand over to enable him to introduce them.  In ———— v. *Walford*, (4 Russ. 372,) A.

(*a*) See *Miller* v *Bear*, (3 Paige, 466.)

Lord *v.* C. and J. H. Underdunck.

had contracted with B. to convey to him an estate, and before the conveyance, B. re-sold it to C., and A. signed a writing with B. agreeing to convey to C. at B's. request.   C. then agreed to convey the estate to W., who gave notice of that agreement to A., and required him to convey the estate to him, W.   In consequence of which, A., when requested by B. to convey to C., refused.   B. then filed a bill against A. to compel him to convey to C.   A. insisted in his defence, that W. should have been made a party defendant in the suit, and that he could not with safety, have conveyed to C.   The court held, that W. was not a necessary party, and that A. ought to have conveyed to C., and charged A. with the costs of the suit.

In reference to directing the cause to stand over, in order to bring the heirs of Smith before the court, assuming for the argument, that the suit could then be maintained.   The case of *Van Epps* v. *Van Deusen,* (4 Paige, 64. 75,) is an authority against retaining the suit.   The bill states the contract erroneously, as being for the 100 acres of the complainant, and not for the whole tract of 800 acres.   Although it speaks of the tract by its local name, " *the Hathaway lot,*" yet the lot is described by metes and bounds, and as containing one hundred acres, and the length of the sides given in the description, makes precisely that quantity.   The bill, therefore, made the case of a transfer by the vendee, of the whole subject matter to the complainant.   A demurrer to the bill, on the ground that Smith's heirs were not made parties, would not have presented the whole ground of objection on that score.   The adult defendant, in her answer, distinctly insists both that the complainant had no right to file the bill, and that Smith's heirs ought to have been made parties.   The complainant ought then to have amended his bill ; and considering his omission to amend, when his attention was thus called to the subject, and the very serious doubt whether any addition of defendants will render his suit available, I feel that I should err in the exercise of the discretion, which the court possesses over the subject, if I directed the suit to stand over for that purpose.

The bill must be dismissed with costs, but without prejudice

to the claim or right of the complainant, in any future litigation.(*a*)

---

    (*a*) A bill was subsequently filed by the heirs of Smith, which came before the court in September, 1844, on a demurrer by Underdunck's heirs. See *post.*