BARBARA CAVALLI, Respondent, v. WILLIAM R. ALLEN,
Appellant.

A vendee, in possession of lands under a contract of sale, in an action of ejectment brought by the vendor, can assert the same equitable rights as he could if he were a party to an action for the specific performance of the contract.

If the vendor be indebted to him upon an independent, liquidated claim, to an amount sufficient to balance the unpaid purchase-money, he can set up the same and ask to have it applied in payment, and for a specific performance on the part of the vendor.

The same rule applies to a sub-vendee, as against his vendor, the original vendee, and also as against an assignee of the latter. Especially is this true, in the latter case, where there is some peculiar equitable ground for relief, as that of the insolvency of the assignor.

J. contracted to sell certain premises to S., who sub-contracted a portion thereof to defendant; the latter entered into possession; S. did not perform his contract, and the same was surrendered, and a new contract of sale executed between him and J.; S. thereafter received a payment from defendant; S. assigned his contract to C., who knew at the time of defendant's interest; the latter then held a note given to him by S. to more than balance the unpaid purchase-money; S. was insolvent; J. conveyed to C., " saving all rights, if any," under his contract with S. In an action of ejectment by plaintiff as devisee of C., *held*, that C. took his assignment subject to the equities between defendant and S.; that the latter could not affect defendant's rights without his consent, by surrendering the old and taking a new contract; but that the subsequent payment was an adoption and ratification by the defendant of the change; that defendant had the right to offset the note against the unpaid purchase-money, and that plaintiff was not entitled to recover.

(Argued January 17, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, affirming a judgment in favor of plaintiff, entered upon the decision of the court at a trial term.

This was an action of ejectment to recover possession of a strip of land, five feet wide and one hundred feet deep, on Sixth street, in the city of Buffalo. .

Defendant, in his answer, claimed the legal title to the land in dispute, and also set forth certain special facts, being substan-

tially the same as hereinafter stated, under which he claimed that plaintiff's title, if not absolutely void, was held by her in trust for defendant, and that he was entitled to a conveyance, which he asked that plaintiff should be decreed to make. The issues as to the legal title were tried by a jury, who rendered a verdict for plaintiff. The court reserved the issues presented by that portion of the answer asking equitable relief. On the trial before the jury, it appeared that George W. Jonson originally owned the premises, and on the 24th of November, 1854, conveyed the same with other premises adjoining, in all thirty-five feet front, to Charles Cavalli, " saving all rights, if any, under a contract from G. W. Jonson to Isaac L. Schreder, dated September 1, 1851, assigned to said Cavalli by said Schreder, on said premises;" that a prior contract was executed December 17, 1849, for the sale of the said premises by Jonson to Schreder. Cavalli died leaving a will, by which the premises were devised to plaintiff.

The court found the following facts in addition to those found by the jury: That, between the 17th day of December, 1849, and the 11th day of February, 1850, Isaac L. Schreder assigned, by an instrument in writing, to the defendant his interest in the original contract, executed by George W. Jonson to him, the said Isaac L. Schreder, so far as the five feet in question are concerned, for the sum of fifty dollars, to be paid at the same time that the payments are stipulated to be made to the said Jonson, in and by the said contract; that the defendant paid to Schreder, on and toward the said fifty dollars, the sum of ten dollars when the assignment was made. That Schreder failed to make the payments according to the requirements of his contract with George W. Jonson, and thereafter; and on the 15th day of September, 1851, the said George W. Jonson canceled, and the said Isaac L. Schreder surrendered up, the original contract, and the parties executed the second contract hereinbefore set forth; that the original contract was surrendered and the second one was given without any notice to the defendant. That, on the 2d day of April,

1852, the defendant paid to Isaac L. Schreder fifteen dollars toward the contract-price of the said five feet. That, on the 26th day of May, 1852, Isaac L. Schreder assigned to Charles Cavalli the new contract executed between him and the said George W. Jonson, and Charles Cavalli paid the balance of the purchase-money to George W. Jonson, and on the 19th day of November, 1854, George W. Jonson executed and delivered to Charles Cavalli the deed of the thirty-five feet hereinbefore set forth. That defendant held a note given by Schreder to him for $41.75, given April 2d, 1850, which was unpaid. That there were no other payments made to Isaac L. Schreder by the defendant toward the contract-price for the five feet of land than the ten and fifteen dollars above specified; that there was never any agreement to apply any part of the sum due on the promissory note hereinbefore mentioned and referred to on the said contract-price; that the defendant failed to meet the payments as they became due under the assignment or the contract; and he has never paid or offered to pay the balance due. And, thereupon, the court decided that the defendant had failed to establish any equitable defence; and that the plaintiff was entitled to judgment on the said verdict and to recover the possession of the premises therein described. To which ruling and determination the defendant's counsel excepted.

The defendant's counsel asked the court to decide that the defendant had a right to apply the sum due on the promissory note of Schreder above set forth as a payment toward the purchase-price of the five feet of land. The court refused so to decide and defendant's counsel excepted.

*George Wadsworth* for the appellant. Defendant was, in equity, the owner of the land and entitled to a conveyance thereof. (*Lowry* v. *Tew*, 3 Barb. Ch., 407; *Traphagan* v. *Traphagan*, 40 Barb., 537; *Watson* v. *Le Row*, 6 id., 481; *Swartwout* v. *Burr*, 1 id., 495, 499; *Cogswell* v. *Cogswell*, 2 Edw. Ch., 231, 239.) Cavalli and Jonson were, in equity,

merely trustees for defendant. (*Van Allen* v. *Humphrey*, 15 Barb., 555; *Sanders* v. *Aldrich*, 25 id., 63; *Fisher* v. *Fields*, 10 J. R., 494; 2 Story Eq. Jur., §§ 790, 1212.) Defendant's possession was notice to Jonson, Schreder and Cavalli of his rights. (*Cook* v. *Travis*, 20 N. Y., 400; *Williamson* v. *Brown*, 15 id., 354.) Defendant's rights were saved by the deed from Jonson to Cavalli. (*Chapman* v. *Robertson*, 6 Paige, 627; *Holden* v. *Gilbert*, 7 id., 208; *Grant* v. *Tallman*, 20 N. Y., 191.) Schreder could not maintain an action for trespass as Allen was lawfully in possession as owner and purchaser. (*Rawson* v. *Copland*, 2 Sand. Ch., 231.) Defendant had a right to set off the note against Schreder's claim. (*Sutphen* v. *Fowler*, 9 Paige, 280; *Smith* v. *Felton*, 43 N. Y., 419; *Bush* v. *Lathrop*, 22 id., 535: *Lindsay* v. *Jackson*, 2 Paige, 581; *Barber* v. *Spencer*, 11 id., 517; *Bradley* v. *Angel*, 3 Comst., 475; *West. Bk.* v. *Sherwood*, 29 Barb., 383; *Ainslie* v. *Boynton*, 2 id., 258; 3 R. S. [5th ed.], 634, § 12; Code, § 112.) Time is not of the essence of the contract between Jonson and Schreder, or Schreder and defendant. (*Burgett* v. *Bissell*, 14 Barb., 638; *Harris* v. *Troup*, 8 Paige, 423; *Voorhies* v. *Deweyer*, 2 Barb., 37; *Leggett* v. *Edwards*, Hopk., 530.) Defendant is entitled to the benefit of his equitable defence in this action. (Code, § 150; *Crary* v. *Goodman*, 12 N. Y., 266.) The deed from Jonson to Cavalli is void so far as it purports to convey the disputed premises. (3 R. S. [5th ed.], 30, § 167; id., 972, § 6; *Sherry* v. *Freeking*, 4 Duer, 452; *Jackson* v. *Foster*, 12 J. R., 488; *Jackson* v. *Demond*, 9 id., 55; *Pepper* v. *Haight*, 20 Barb., 429.)

*John Ganson* for the respondent. Defendant failed to make out any defence to plaintiff's right to recover at law. (*Jackson* v. *Camp*, 1 Cow., 605, 610; *Jackson* v. *Bard*, 4 J. R., 230; *Smith* v. *Stewart*, 6 id., 46; *Livingston* v. *Prosens*, 2 Hill, 526.) In an action for ejectment the defendant may set up and prove as a defence that he is the equitable owner of the premises and entitled to a conveyance thereof. (*Crary*

v. *Goodman*, 12 N. Y., 266.) But defendant must aver and prove a pending contract unbroken, or facts sufficient to maintain an affirmative action for a specific performance. (*Tibbs* v. *Morris*, 44 Barb., 138 ; *Traphagan* v. *Traphagan*, 40 id., 537.) Defendant could not, on the evidence and facts found, maintain an action for the specific performance of the first contract. (*Lord* v. *Underdunck*, 1 Sand. Ch., 46 ; *Arnoux* v. *Homans*, 25 How. Pr., 427 ; *Mc Williams* v. *Long*, 32 Barb., 194 ; *Jones* v. *Lynds*, 7 Paige, 301, 306.)

DWIGHT, C. The question in this case is, how far a sub-vendee, under a contract of sale of land, has rights against his own vendor (the vendee in the original contract), and to what extent an assignee of such vendor stands in the latter's position.

The most satisfactory way to consider the subject will be to inquire, in the first instance, as to the relations between Schreder, the vendee in the original contract, and the defendant, on the assumption that Schreder had not parted with his interest, and then to examine the effect of his transfer to Cavalli, husband of the plaintiff.

When Jonson, owner of the land, made the contract to sell to Schreder, the latter, in view of a court of equity, became owner of thirty-five feet. He was owner of an equitable estate in fee, though under a duty to complete the transaction by making the payments to Jonson prescribed by the contract. He (Schreder) could then carve out of his own estate smaller derivative estates to sub-purchasers, which as between him and such purchasers would be sustainable under the doctrines of trusts. The consideration which he received from any such purchaser would fasten a trust upon him. For example, if Schreder had contracted to buy of Jonson a large farm, which was subdivided into lots, and had then contracted to sell to various purchasers specific lots, these persons would have had equities which they could enforce against their own contractor (Schreder). On this view, as soon as Schreder entered into the contract of 17th December, 1849, he became

bound to act as trustee for Allen. On the same principle that an ordinary contract of sale converts the owner of the land into a trustee for the vendee, the sub-sale in the present case converted the primary vendee into a trustee for the sub-vendee. Consequently, when the new or substituted contract was made between Jonson and Schreder, of the date of September 15th, 1851, the latter, holding the position of trustee toward the defendant, could do nothing which would impair his rights. The defendant had an election as between him and Schreder, either to adhere to the original contract or to ratify and adopt the substitute. When fifteen dollars were paid, April 20th, 1852, by the defendant, he accepted the new contract with any variations from the provisions of the original agreement; and henceforward the rights of the parties are to be measured by the agreement as thus modified. If it now be assumed that Schreder had taken the title from Jonson, and had brought an action of ejectment against the defendant, he might have made a good defence by showing that he was entitled to specific performance as between him and Schreder. (*Crary* v. *Goodman*, 12 N. Y., 266.)

The remaining point under this branch of the case is, whether the defendant has a right to specific performance as between him and Schreder. It is asserted that full payment has been made for the land purchased by him. The mode of payment is twenty-five dollars in cash on the purchase-price of fifty dollars, and a claim in the nature of a set-off. As to this last point, it appeared that when the action was commenced, Schreder owed the defendant $41.25 on a note, with interest from April 2d, 1850. If Schreder had brought an action for specific performance to recover the amount due him, the defendant, Allen, would have had a right to set off the amount due him on the note, since it would have been one debt against another debt. This is particularly true where there is some peculiar equitable ground not available in a court of law — as that of insolvency, existing in the present case on the part of Schreder. (*Smith* v. *Felton*, 43 N. Y.,

419; *Brewer* v. *Norcross*, 2 C. E. Green [N. J.], 219; *Lord Cawdor* v. *Lewis*, 1 Younge & Collyer [Ex.], 427; 2 Story on Equity, § 1436; *Sutphen* v. *Fowler*, 9 Paige, 280.) In the case last cited the action was for specific performance of a contract for the conveyance of land, brought by a vendee against an heir at law. It appeared that the vendor had died insolvent and indebted to the vendee. It was held that the vendee was entitled to have such debt set off against a balance due by him for the purchase-money. The debt in that case, as in the one at bar, arose from a wholly independent transaction.

The defendant could not be deprived of his equitable rights by Schreder though he should bring an action of ejectment. At law, the defendant would, of course, have no defence. Under the Code, he may set up his equitable defences. The true view is, that the defendant may set up as an answer to the action of ejectment the same equitable rights to which he would have been entitled had he been a party to an action for specific performance. The result is that, had Schreder brought the present action, the defendant would have had a right to have set up the facts, as entitling him to a judgment for specific performance; and such judgment should have been given in his favor.

It only remains to consider the position of Cavalli, whose rights the plaintiff represents. When Cavalli became assignee of the Schreder contract, he had notice of the defendant's rights. This cannot be successfully disputed. He, accordingly, took Schreder's position, and was bound by all the equities that could have been set up against him. It is a mistake to suppose that Cavalli is to be regarded as an assignee of Jonson, the vendor, and so within the principle of *Lord* v. *Underdunck* (1 Sand. Ch., 46), which holds, in substance that a vendor of land is not bound to recognize the equities of a partial assignee of a vendee. That is not the present case. Cavalli was an assignee of the vendee, and when he acquired the title of the vendor, he obtained it solely by virtue of his claims as assignee of the vendee. At that time he held his

equitable interest subject to the defendant's rights. No subsequent acquisition of the vendor's title could alter the relations between him and the defendant. He only acquired Jonson's title as *an incident* to his claims as assignee of Schreder. The case is precisely the same as though Schreder had received the conveyance from Jonson, the vendor, and was now bringing an action of ejectment against the defendant. It may be added, that Cavalli expressly took his assignment from Schreder subject to the equities between the latter and the defendant, and, consequently, subject to the rule that the equity prior in time is superior in right. A set-off is a defence in equity against an assignee as well as against an assignor. (*Barber* v. *Spencer*, 11 Paige, 517; *West. Bk.* v. *Sherwood*, 29 Barb., 383; *Ainslie* v. *Boynton*, 2 id., 258.)

The judgment of the court below should be reversed.

REYNOLDS, C. Jonson was unquestionably the owner of the premises in dispute, when the defendant first became connected with the title; and, on the 27th of November, 1854, conveyed it to Charles Cavalli, the plaintiff's devisor, by deed, "saving all rights, if any, under a contract from G. W. Jonson to Isaac L. Schreder, dated September 15, 1851, assigned to said Cavalli by said Schreder in said premises, this day canceled;" and excepting, also, "all taxes since December 17, 1849, from the operation of the covenant of warranty." It, therefore, would seem to follow that if the defendant acquired no substantial right under the contract between Jonson and Schreder, which ought to be respected, it would be apparent that the recovery in favor of the plaintiff should be affirmed.

It appears that, for many years prior to the origin of the present dispute, the defendant was the owner of premises adjoining those in controversy. To avoid some question of encroachment the defendant, on the 12th of December, 1849, agreed with George W. Jonson to purchase of him two feet of land, then adjoining the defendant's own, which Jonson conveyed to him by deed, dated May 25, 1857.

On the 17th of December, 1849, Jonson contracted with Schreder to sell him thirty-five feet of land next northerly, and adjoining the premises of the defendant, and Schreder took immediate possession. As soon as Schreder got his contract from Jonson he, for the consideration of fifty dollars, assigned all his right, under the contract, to the conveyance of five of the thirty-five feet next adjoining the premises of the defendant to him; and, thereafter, Schreder occupied thirty feet, and the defendant fenced in, took possession of the five feet, improved it and in that actual possession has since remained, claiming to be owner. Of all this Jonson and Charles Cavalli had actual knowledge. At the time of the purchase, the defendant paid Schreder ten dollars of the purchase-money, and the latter owing the former $41.75, on the 2d of April, 1850, on that day gave the defendant his note for that amount. On the 15th of September, 1851, Schreder and Jonson made a new contract for the sale of the thirty-five feet of land, by which the time of the payment of the purchase-price was extended. At this time Jonson knew that Schreder had sold five feet of the thirty-five feet to the defendant, and that he was then, and had been, in the actual possession thereof. Afterward, and on the 20th of April, 1852, the defendant paid Schreder fifteen dollars more on the purchase-money of the five feet of land; and on the 26th of May, 1852, Schreder assigned to Charles Cavalli, the plaintiff's devisor, "all his right, title, interest, claim and demand in and to" the contract of September 15, 1851, and the premises therein described. Cavalli then knew of the sale of the five feet to the defendant, and afterward paid Jonson the balance due him on the Schreder contract, and took a deed, subject to all the rights before mentioned, took actual possession of the thirty feet which Schreder had, and then brought his action to recover the five feet in the possession of the defendant, and recovered in the court below. Upon the facts appearing in the case, I think the plaintiff ought not to recover.

Whatever Jonson might have been entitled to, if he had

brought the action because of the non-performance of the contract by Schreder, I think it very obvious that Charles Cavalli and his successor must submit to all the equities existing between the defendant and Schreder; and Schreder, as seems very plain, could not have recovered of the defendant the premises in question. It is a very plain proposition of law, that a person in the actual possession of real estate gives notice to all the world proposing to deal with it of his legal and equitable rights, and every one deals at his peril, if he fails to make due inquiry. (*Cook* v. *Travis*, 20 N. Y., 400; *Williamson* v. *Brown*, 15 id., 354.) In this case, Charles Cavalli had actual notice of the rights of the defendant, and with perfect knowledge he assumed the place of Schreder, and his successor brought her action upon that title, and it cannot be sustained in law or equity.

Assuming, as we must, that Schreder had brought the action, it would have appeared that he had sold the premises in dispute to the defendant for an adequate consideration, and put him in actual possession; that the defendant had paid him in cash more than half the consideration to be paid; and that Schreder, in fact, owed him more than the other half which was unpaid. It seems very plain that, under no condition of the law, as it is now well understood, could there have been, properly, any recovery against the defendant.

The plaintiff, who stands in the place of Schreder, and has no greater right than he had, must abide the same fate.

A new trial must be granted, with costs to abide the event.

All concur.

Judgment reversed