JOHN W. GIBSON, Respondent, v. GEORGE A. THOMAS et al., Defendants, and THE ULSTER AND DELAWARE RAILROAD COMPANY et al., Appellants.

MORTGAGE — RECORDING ACT — WHEN ASSIGNEE FOR VALUE MAY ENFORCE MORTGAGE AGAINST PURCHASER OF PART OF MORTGAGED PROPERTY HAVING UNRECORDED RELEASE THEREOF.    Where the owner of a farm, some years after the execution of a mortgage thereon, conveyed a strip of land through the farm to a railroad company, which had the deed · recorded, entered into possession of the land and ever since has maintained and operated a railroad thereon, and, about the same time, the owner of the mortgage, holding it by mesne assignments from the mortgagee, all of which had been recorded, executed to the mortgagor a release of the land conveyed to the railroad company, which was delivered to the company, but not recorded by it, a subsequent purchaser of the mortgage for full value, holding it under a recorded assignment, and who, at the time of the purchase of the mortgage, had no knowledge of the existence of the release, had not seen the farm and did not know that the railroad ran through it, is protected under the Recording Act in his lien upon the entire premises, unaffected by the release.

*Gibson* v. *Thomas*, 85 App. Div. 243, affirmed.

(Argued January 12, 1905; decided February 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 7, 1903, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The plaintiff, as the assignee of a mortgage, affecting a cer-

tain farm property through which the road of the Ulster & Delaware Railroad Company runs, sought, by this action in foreclosure, to compel the payment of the principal sum due under the mortgage. The defense was made, in the railroad company's answer, that the land occupied by its railroad was not subject to the mortgage lien; but had been released therefrom. Thomas, the owner and the mortgagor, some years after the execution of the mortgage in question, conveyed to the Delaware & Otsego R. R. Co., now a part of the Ulster & Delaware R. R. Co., a strip of land through his farm. It entered into possession, with all usual evidences of railroad occupation, and has, since that time, operated its railroad upon the land. Mrs. Rogers, the then holder of the mortgage by mesne assignments from the mortgagee, for a nominal consideration, executed a release of the land to the mortgagor; which was delivered to the company. The deed and the release were left at the county clerk's office with certain instructions; but by whom it does not appear. These instructions were testified by the clerk to be as follows: "I herewith hand you deed from George A. Thomas for right of way; also release from Helen B. Rogers from the F. R. Gilbert mortgage. I presume the assignment from Gilbert to Newell has not been recorded, nor the will of Newell, the father of Mrs. Rogers. I have written Thomas all about the matter and he is to cause to be recorded all necessary papers to invest Helen B. Rogers the owner of the mortgage and *then you may record this release*." Several years later, Mrs. Rogers assigned to this plaintiff the mortgage, in consideration of the payment by him of the whole amount unpaid thereon at the time. This assignment was duly recorded, as all the previous ones had been; but the release of the railroad lands had not actually been recorded up to the commencement of the action. The plaintiff resided at a distance from the mortgaged premises and his testimony is not disputed that, at the time of purchasing the mortgage, he had not seen the farm and did not know that the railroad ran through it; nor of any release of the land. The plaintiff had judgment in the trial court;

which has been affirmed by the Appellate Division, in the third department.

*Lewis E. Carr* and *F. M. Andrus* for appellants. The plaintiff, as the assignee of the mortgage Helen B. Rogers owned in 1887, acquired no greater or broader right to the enforcement of the mortgage than his assignor had at the time she assigned the mortgage to him. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Schaffer* v. *Reilly*, 50 N. Y. 61; *Greene* v. *Warnick*, 64 N. Y. 220; *Trustees of Union College* v. *Wheeler*, 61 N. Y. 88; *Owen* v. *Evans*, 134 N. Y. 514.) The plaintiff's right to enforce his mortgage against the land conveyed by Thomas to the railroad company, and released from the mortgage by its then owner, cannot be sustained under the Recording Act. (*Rayner* v. *Wilson*, 6 Hill, 469; *Green* v. *Warnick*, 64 N. Y. 220; *Campbell* v. *Vedder*, 1 Abb. Ct. App. Dec. 295; *Gillig* v. *Moss*, 28 N. Y. 191; *N. Y. L. Ins. Co.* v. *Smith*, 2 Barb. Ch. 82.) The release was in fact recorded within the meaning of the Recording Act, and so was not an instrument falling within the condemnation of the statute relating to unrecorded conveyances. (*M. L. Ins. Co.* v. *Dake*, 87 N. Y. 257; *Bedford* v. *Tupper*, 30 Hun, 174; *Reid* v. *Town of Long Lake*, 44 Misc. Rep. 370; *M. Co.* v. *Lambier*, 108 N. Y. 578.) If, however, the release was not recorded the plaintiff had such constructive notice of the rights of the railroad company as forbids the upholding of his claim against the land released from the mortgage. (*Frear* v. *Sweet*, 118 N. Y. 462; *Phelan* v. *Brady*, 119 N. Y. 587; *Trustees of Union College* v. *Wheeler*, 51 N. Y. 88; *Cavalli* v. *Allen*, 57 N. Y. 508; *Baker* v. *Thomas*, 61 Hun, 17; *Briggs* v. *Thompson*, 86 Hun, 607; *Merritt* v. *N. R. R. Co.*, 12 Barb. 605; *Page* v. *Waring*, 76 N. Y. 463; *Van Epps* v. *Clark*, 25 N. Y. S. R. 896; *Anderson* v. *Blood*, 152 N. Y. 285.)

*Marion M. Palmer* for respondent. An assignee of a mortgage becomes a purchaser under the Recording Act. An

assignment of a mortgage, the satisfaction of a mortgage, and a release of a part of the mortgaged premises are conveyances within the provisions of the Recording Act. (1 R. S. 756, § 1; L. 1896, ch. 547, § 241; *Briggs* v. *Thompson*, 86 Hun, 607; *St. John* v. *Spalding*, 1 T. & C. 483; *Belden* v. *Meeker*, 47 N. Y. 307; *Baker* v. *Thomas*, 61 Hun, 17; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446; *Decker* v. *Boice*, 83 N. Y. 215; *Brewster* v. *Carnes*, 103 N. Y. 562; *Van Keuren* v. *Corkins*, 66 N. Y. 77; *Westbrook* v. *Gleason*, 79 N. Y. 23; *Frear* v. *Sweet*, 118 N. Y. 463; *Larned* v. *Donovan*, 84 Hun, 533; *M. L. Ins. Co.* v. *Wilcox*, 55 How. Pr. 43; *Smyth* v. *K. L. Ins. Co.*, 84 N. Y. 589.) An assignee in good faith and for value of a mortgage, by recording his assignment, may gain priority over a prior unrecorded mortgage and also gain rights, although such priority and rights could not be claimed by his assignor. (*Briggs* v. *Thompson*, 86 Hun, 607; *Baker* v. *Thomas*, 61 Hun, 17; *St. John* v. *Spalding*, 1 T. & C. 483; *Decker* v. *Boice*, 83 N. Y. 215; *Brown* v. *Volkening*, 64 N. Y. 76.) The release in question is void as to the plaintiff in this action. (*Briggs* v. *Thompson*, 86 Hun, 607; *Baker* v. *Thomas*, 61 Hun, 17; *Decker* v. *Boice*, 83 N. Y. 215; *Brown* v. *Volkening*, 64 N. Y. 76.) One who seeks to establish a right in hostility to a recorded title to, or security upon land, under and by virtue of a prior unrecorded conveyance or prior equities, must show actual notice to the subsequent purchaser of his rights, or prove circumstances such as would put a prudent man upon his guard, and from which actual notice may be inferred and found. (*Holland* v. *Brown*, 140 N. Y. 344; *Cook* v. *Travis*, 20 N. Y. 400; *Brown* v. *Volkening*, 64 N. Y. 76; *Pope* v. *Allen*, 90 N. Y. 298; *Staples* v. *Fenton*, 5 Hun, 172; *Seymour* v. *McKinstry*, 106 N. Y. 230; *Baldwin* v. *Golde*, 88 Hun, 115; *Marden* v. *Dorthy*, 12 App. Div. 188; *Brown* v. *Thomas*, 61 Hun, 17; *Fassett* v. *Smith*, 23 N. Y. 252; *M. L. Ins. Co.* v. *Wilcox*, 55 How. Pr. 43.) The occupation of the Delaware and Otsego railroad and the Ulster and Delaware railroad was not inconsistent with the title of Helen B.

Rogers as assignee of the mortgage, but was consistent therewith. (*Briggs* v. *Thompson*, 86 Hun, 607; *Cook* v. *Travis*, 20 N. Y. 400; *Fassett* v. *Smith*, 23 N. Y. 252; *M. L. Ins. Co.* v. *Wilcox*, 55 How. Pr. 43; *St. John* v. *Spalding*, 1 T. & C. 483; 1 Am. & Eng. Ency. of Law, 245.) The strip of land occupied by the Ulster and Delaware railroad is subject to the lien of the mortgage in question. (*Early* v. *Roosa*, 35 N. Y. S. R. 900; *Syres* v. *Rathbone*, 9 Abb. [N. S.] 277; *Jackson* v. *Collins*, 3 Cow. 89; *Jackson* v. *Bush*, 10 Johns. 223; *Webb* v. *Bindon*, 21 Wend. 99.)

G<small>RAY</small>, J. The appeal presents the question of how far the plaintiff was protected, in his transaction with the holder of the mortgage, by the Recording Act. (1 R. S. 756, §§ 1, 36, 37, 38, 41.) Was he, in purchasing from her the mortgage, for the whole amount due upon it and without knowledge, actual, or constructive, of a portion of the mortgaged premises having been released, nevertheless, concluded by the fact of a partial release having been given? If he was, then he was bound by a transaction, to which he was in nowise a party, of which he had no knowledge, and which was subsequent to the mortgaging of the premises by their owner. That he would have occupied no better a position than did his assignor, prior to the passage of the Recording Act, may be conceded; but, with that act upon the statute books, was he not entitled to rely upon the title as it appeared of record? Was that not its purpose? I think that he was and that the failure of the railroad company to cause its release of the land to be recorded was an omission, which permitted the subsequent assignee of the mortgage, by recording his instrument of assignment, to gain priority over the company's right. We may dispose, at once, of the claim that the release was, in fact, recorded. It, clearly, was not delivered to the clerk to be recorded, until some other papers were sent for record. In other words, it was left with the clerk conditionally and not for immediate record. The facts, therefore, differ materially from what they were in *Mut. Life Insurance Co.* v. *Dake*, (87 N. Y. 257).

The position of the appellant is, and must be, therefore, that there was, in its visible and notorious possession and occupancy of the land conveyed by the deed to it, such constructive notice of its rights as to defeat the claim of the respondent to have all of the property affected by the mortgage subjected to its payment. That argument is rested, somewhat, upon the general proposition that an assignee takes subject to the equities enforceable against his assignor. But those equities are such which attended the transaction between the original parties. (*Trustees of Union College* v. *Wheeler*, 61 N. Y. 88, 104.) There were no orignial equities, however, which, as between mortgagor and mortgagee, would bind the latter and those taking under him. The only fact, upon which an equity is sought to be based, is that the plaintiff's assignor had released to the mortgagor, (not to the purchaser from the mortgagor), a portion of the mortgaged premises. But that is a situation, which the Recording Act was designed to meet. Mortgages and assignments of mortgages are conveyances within the intendment of that act. That is clear from its language and is settled by authority. (*Decker* v. *Boice*, 83 N. Y. 215.) The purpose of the act was, not merely to regulate the relations to each other of successive assignees of the mortgagee of the same mortgage ; but it was to confer that priority over all kinds of conveyances, which, all things being equal, the date of the record entitled each to. And this would apply, where the assignor of the mortgage was disabled from claiming a priority. (*Decker* v. *Boice*, *supra*, at p. 221.) In brief, the earlier recorded assignment of a mortgage should give it relative priority over every other form of conveyance of an interest in the land affected.

The argument based upon possession and occupancy, as constituting notice to persons acquiring subsequent interests in the land, is fallacious. Doubtless, possession and occupancy under an unrecorded conveyance may constitute notice to him, who proposes to acquire an interest in the land, whether by conveyance, or by mortgage. (*Cavalli* v. *Allen*, 57 N. Y. 508 ; *Phelan* v. *Brady*, 119 ib. 587.) But, unless the posses-

sion and occupancy be so inconsistent with the existence of a mortgage lien, as to suggest to a prudent person a claim of title adverse to the mortgagee, they would mean nothing more to him than the evident facts. *Briggs* v. *Thompson*, (86 Hun, 607), in which case the present chief judge of this court concurred in the decision, is precisely in point as an authority, and I do not find any case in which it has been questioned. This appellant took its title from the mortgagor of the land and was not a stranger; in which case the respondent would have been chargeable with some notice of its claims to possession. The respondent knew, or is presumed to have known, of the recorded deed conveying the land to the appellant; but why should that fact lead him to suppose that it did not take from the mortgagor subject to the mortgage? The mortgage was of record and, apparently, undischarged. There is no reason why railroad corporations should not take lands subject to mortgages. That their properties are, as a rule, subjected to mortgages is a notorious fact. Here the company took its title from the mortgagor; for the release was not to it and gave, of itself, no right to possession; it did not record the release from the mortgage lien and the plaintiff purchased the mortgage without knowledge, actual or constructive, of the release and with nothing to lead him to believe that the possession of the company was hostile to his mortgage. It seems to me that a fair and just construction of the Recording Act makes its provisions applicable for the protection of the plaintiff's right to the full security of the mortgage. To so hold is to infer, legitimately, the full beneficial purpose of an enactment intended for the protection of persons, who, in good faith and for value, acquire an interest in lands.

I advise the affirmance of this judgment, with costs.

O'Brien, J. (dissenting). This was an action to foreclose a mortgage, and judgment was ordered in favor of the plaintiff granting the relief demanded in the complaint. There is but one question involved in the appeal. The question is whether the lien of the plaintiff's mortgage covered certain lands, of

which the railroad corporation, which is made a defendant, was in possession and to which it claimed title free and clear from the mortgage. The courts below have decided against the contention of the railroad.

The question involved in the appeal arises upon undisputed facts and no question of fact is involved in the case. On the 7th day of December, 1868, George A. Thomas and wife executed a mortgage to Francis R. Gilbert upon a farm in Delaware county to secure the payment of three thousand five hundred dollars. The farm is described as containing one hundred and ninety-five acres. This mortgage was recorded in the clerk's office of the county on the 17th of December, 1868. On the 12th of November, 1870, Gilbert assigned the mortgage to one Newell and this assignment was recorded on the 9th of March, 1871. On the 12th of February, 1880, Newell having died, his executors assigned the mortgage to Helen B. Rogers, which assignment was recorded February 18, 1884. On the 5th of May, 1894, Helen B. Rogers assigned the mortgage to the plaintiff and this assignment was recorded May 9th of the same year. This is the history of the plaintiff's title to the mortgage in question.

The title of the railroad to a small strip of land that runs through the farm is as follows: On the first day of June, 1887, Thomas and wife, the original mortgagors, conveyed to a railroad, whose rights the defendant railroad in this action subsequently acquired. This conveyance to the railroad was of a portion of the mortgaged premises containing 2.36 acres of land, being a strip of land sixty-six feet wide through the farm. That deed was recorded August 22, 1887. It conveyed the land to the grantee named, in fee, free and clear of all incumbrances. On the 21st of July, 1887, Helen B. Rogers, then the owner of the mortgage in question, executed a release in the form of a quitclaim deed of the premises described in the deed to the railroad company from the lien of the mortgage. Such release was delivered to the railroad company. The Thomas deed to the company and the Rogers release were sent to the clerk's office for record at the same time,

that is, on August 22, 1887. The release was not actually recorded, but remained in the clerk's office for record from the date last named to the commencement of this action. The consideration named in the Thomas deed to the railroad company was paid. The company went into possession of the land described in the deed under it; fenced the land, constructed a railroad upon it, and thereafter operated such railroad over it, and at all times since the delivery of the deed the railroad company named as grantee and its successor, the defendant in this action, have been in possession of the land. This action to foreclose the mortgage was commenced January 8, 1902, and the railroad was made a party defendant. The railroad company answered the complaint and denied that the portion of the mortgaged premises which was in its possession was, at the time of the commencement of the action, subject to the lien of the mortgage, and asserted that, by the Thomas deed, the Rogers release and the actual and open occupation of the land for and as a railroad the land described in such deed and release became and was freed from the lien of the mortgage. This defense presented the only issue for trial and the only question tried in the case. The question is whether, upon these facts, the 2.36 acres in the possession of the railroad should have been included in the judgment of foreclosure, which directed that the same be sold with the rest of the farm. It was virtually held that the deed and release to the railroad above described, and its possession and occupancy of the piece of land was no defense as against the plaintiff's mortgage.

The learned counsel for the railroad has argued the question from more than one standpoint, but there is only one proposition asserted in his argument that is necessary to deal with. There is no dispute about the fact that, at the time the plaintiff took the assignment of the mortgage, the railroad was in the actual, open and visible possession of the strip of land which it claims to own, and it is not only admitted but asserted by the learned counsel for the plaintiff that the assignee of a mortgage becomes a purchaser under the Recording Act. An

assignment of a mortgage and the satisfaction of a mortgage and the release of a part of the mortgaged premises are conveyances within the meaning of that statute. At common law a mortgage had the effect of vesting the whole title in the mortgagee. Under the law, as it exists in this state, a mortgage is a grant with a defeasance clause and a power of sale in the mortgagee. When the plaintiff was about to buy the mortgage in question he sought to acquire an interest in land, though it was a mortgage interest or such an interest as a mortgage vests in the person who holds it. Therefore, when the plaintiff took the assignment of this mortgage he acquired an interest in the farm in question. If he had purchased the farm, I think that all admit that he would be bound by any existing facts that would constitute constructive notice to him of the rights of others, and it is difficult to see why the same principle would not apply when he sought to become the owner of a mortgage which conveyed to him an interest in the farm.

There is as already stated no dispute whatever about the fact that, at the time that the plaintiff took the assignment of the mortgage the railroad was in the actual, open and visible possession of that part of the farm which it now claims to own. The right of way of a railroad, inclosed by fences, upon which trains are operated day and night, constitutes an open, visible and notorious claim of right upon its part to the land, upon which its operations are conducted, and the question is whether this situation existing at the time that the plaintiff purchased the mortgage in question, was not constructive notice to him of the right which the company now asserts. We think it was, and while it may be true that distinctions have been made or sought to be made affecting this principle, yet we think that it is the law of this state. This, we think, will appear from a few citations from cases in this court.

In *Trustees of Union College* v. *Wheeler* (61 N. Y. 88, 98) it is said: " The effect of the release was to discharge the land of those holding contracts of purchase at the time the mortgage was given. The actual occupancy of the parties as

to whose lands the judgment of the Special Term was affirmed, by a residence in dwellings erected thereon and making improvements, was constructive notice to Nott of their rights, and he was chargeable with the consequence thereof, and could not do anything in derogation of those rights or to their prejudice."

In *Cavalli* v. *Allen* (57 N. Y. 508, 517) it is said : " It is a very plain proposition of law that a person in the actual possession of real estate gives notice to all the world proposing to deal with it of his legal and equitable rights, and every one deals at his peril if he fails to make due inquiry."

In *Frear* v. *Sweet* (118 N. Y. 454, 462) it is said : " Although the deed to Clement Sweet was not recorded until long after it was made, the notice which possession would afford of his rights was furnished by the fact that he went into actual possession of and occupied the five acres from the time he took the conveyance."

In *Phelan* v. *Brady* (119 N. Y. 587, 591, 592) it is said : " Actual possession of real estate is sufficient notice to a person proposing to take a mortgage on the property, and to all the world of the existence of any right which the person in possession is able to establish."

It is difficult to see why the same principle does not apply to a person proposing to buy an existing mortgage as to one who proposes to take a mortgage as an original security. The principle asserted in the case last cited was applied in the case of *Holland* v. *Brown* (140 N. Y. 344), and again in a more recent case (*Cornell* v. *Maltby*, 165 N. Y. 557, 560), where it was said that the open, visible possession and actual occupancy of premises was constructive notice to all the world of the existence of any right which the plaintiff might be able to establish in the mortgaged premises. The same doctrine was laid down in the case of *Seymour* v. *McKinstry* (106 N. Y. 230) and in *Sanders* v. *Riedinger* (30 App. Div. 277, 284). The principle was thus stated by the Supreme Court of the United States: " The law is perfectly well settled, both in England and in this country, except perhaps in some of the New

England States, that such possession, under apparent claim of
ownership, is notice to a purchaser of whatever interest the
person actually in possession has in the fee, whether such
interest be legal or equitable in its nature, and of all facts
which the proposed purchaser might have learned by due
inquiry." (*Kirby* v. *Tallmadge*, 160 U. S. 379, 383.)   The
rule was thus stated upon the authority of leading cases upon
the subject in that court and as deduced from text writers
of high authority.   Inasmuch as it is conceded that the assign-
ment of the mortgage conveys an interest in land and is
within the scope of the Recording Act it is difficult to see why
the principle does not apply with full force to the plaintiff.

The learned trial court held that the possession and occupa-
tion of the railroad and the general situation existing at the
time that the plaintiff acquired title to the mortgage was con-
sistent with the lien originally acquired.   It may be that
plausible reasons can be given for the support of this propo-
sition, but it does not seem to us to be correct.   It may be
true that, in some cases, railroads have gone into possession
and expended large sums of money in the construction and
equipment of a road without having acquired good title to
the land constituting its right of way, but such cases, if they
exist at all, must be in the nature of things quite exceptional.
The general and natural conclusion that any reasonable man
would arrive at when about to purchase a mortgage on such a
piece of property, would be that the railroad had some rights
that he was bound to take notice of.   When the plaintiff pur-
chased the mortgage in question he was chargeable with
notice of the situation existing upon the farm upon which he
was about to acquire a lien.   He found a strip of land fenced
in, upon which the railroad had constructed its roadbed and
laid down its tracks.   He found that a railroad was being
operated upon this piece of land and that it had been so oper-
ated for many years.   Can it be supposed that, as a reason-
able man, he could come to the conclusion that the railroad
had gone into possession with no title except the Thomas
deed, which was on record, leaving an outstanding mortgage .

to menace its title in the future? If he was really justified in such a view, it may be that he could assure himself that the situation was not inconsistent with the lien of the mortgage which he was about to purchase. But it does not seem to us that any reasonable man, viewing the situation as it was, could fairly come to any such conclusion. There was certainly enough in the situation to put the plaintiff upon inquiry and if he was bound to inquire, then he is chargeable with all the knowledge that such an inquiry would furnish. Pursuing such an inquiry he would have found that the mortgage which he was dealing with had been released by the person who then owned it and that the railroad had a title free and clear from the lien of the mortgage. We think it is a reasonable rule to hold in such cases that the plaintiff was bound to take notice of the situation that existed upon the farm covered by the mortgage and that such a situation was sufficient to put a reasonable man upon inquiry as to the right which the railroad claimed in the land which it had fenced and separated from the farm and constructed a road upon. So we think that the piece of land in the possession of the railroad was improperly included in the judgment of foreclosure and sale. It follows that the judgment should be reversed and a new trial granted, with costs to abide the event.

HAIGHT, J. (dissenting). I think this judgment should be reversed. I concur in the opinion of O'BRIEN, J., but wish to add thereto an additional reason. The trial court held that the possession and occupation by the railroad company of the strip of land in dispute was not inconsistent with the existence of the lien of the mortgage; or, in other words, that its occupancy and possession were subject to the mortgage. In this, I think, the trial court erred. The records of the county clerk's office disclosed the fact that the railroad company held title through a deed executed by George A. Thomas and wife, who were then the owners, containing full covenants, including that the premises conveyed were free and clear of " all incumbrances whatsoever." This covenant is to the effect

that the lien of the mortgage had ceased to exist so far as the strip of land in question was concerned, and the possession and occupation of the railroad company thereunder would be inconsistent with the presumption that it held subject to the mortgage. This, I think, accompanied with the exclusive and notorious occupation and possession by the railroad company, of which the plaintiff had notice at the time he purchased the mortgage, was sufficient to put him upon inquiry with reference to the rights of the railroad company, and distinguishes this case from that of *Briggs* v. *Thompson* (86 Hun, 607), upon which the trial court based its decision.

CULLEN, Ch. J., VANN and WERNER, JJ., concur with GRAY, J.; BARTLETT, J., concurs with O'BRIEN and HAIGHT, JJ.

Judgment affirmed.