*633 OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The bank holds a mortgage, now in default, upon a residential property solely owned by Gerald Talandis, the mortgagor, and occupied by Vita Talandis, his former wife. The bank and Vita Talandis move for partial summary judgment in the foreclosure proceeding. That is, the bank seeks a determination that any interest in the property asserted by Vita Talandis is subordinate to the bank’s lien of mortgage. She cross-moves for a ruling that her possessory interest, which she enjoys pursuant to a separation agreement with her former husband, survives the foreclosure and is prior to the mortgage.
Vita and Gerald Talandis were married in 1961 and separated in 1980. A separation agreement was signed on April 8, 1981 in which Gerald Talandis agreed that Vita Talandis would have exclusive possession of the marital home on Churchill Drive, pending its sale. The agreement requires the husband, upon such sale, to provide the wife with a substitute residence. Further, the agreement gives the wife exclusive use and occupancy of the substitute home until the younger of their children reaches 18 and the right, after that event, to retain the property or sell it and use the proceeds to buy another.
A conversion judgment of divorce, based on the separation agreement, was granted on October 21, 1982. The terms of the separation agreement, relating to Vita’s right to a substitute home, were blazed upon the face of the judgment. Indeed, the agreement was “accepted and approved * * * and made a part of this judgment”, though not “merged”. The judgment was duly entered upon the records of the County Clerk. On August 3,1983 the agreement was modified by the parties to identify a home on Nelson Road as the substitute residence. In October 1984 a second amending agreement was signed which reaffirmed the separation agreement of 1981 and the amendment of 1983. Neither of the amending documents was filed of record.
The bank became involved in the Nelson Road property in October 1986 when it issued a mortgage to Gerald Talandis, secured by this property. The mortgage was consolidated with a second mortgage, issued by the bank in August 1995, on the same property. It is not disputed that Gerald Talandis failed to make payment on the mortgage in December 1997 or thereafter. Some $79,000 is now due and owing. Gerald Talandis, we are advised, has filed a petition in bankruptcy. Hence, the *634 bank’s action to foreclose its mortgage against the debtor has been stayed. However, the motions before us do not affect Gerald’s obligations and, hence, are not governed by automatic stay provisions of 11 USC § 362.
Both Vita and Gerald Talandis assert that the bank knew of their divorce when the mortgages were negotiated with Mr. Talandis in 1986 and 1995. The bank concedes as much but contends it had no actual notice of the terms of the judgment of divorce, including its recitals regarding Vita’s right to the exclusive use and occupancy of a residence to be provided by Mr. Talandis. The bank, as part of Mr. Talandis’ application for the mortgages, required the submission of a financial disclosure form. Since the mortgages were treated as commercial loans, the form would have elicited data about any revenues produced by the property. Any such inquiry would have disclosed that no revenue was forthcoming from the former wife to explain or justify her occupancy of the premises to be mortgaged.
The bank concedes that an officer visited, inspected, and appraised the Nelson Drive property prior to the granting of the loan in 1986. No evidence has been shown to refute her allegation that neither Mr. Talandis nor any of his possessions were present in the home and that: “The contents [of the home] were obviously, to anyone who inspected the property, the property of a woman” (Vita Talandis affidavit of Jan. 8, 1998 para 3). The affidavit of the inspecting officer concedes that Vita was on the premises and that he made no inquiry of her regarding her visible and open occupancy. At a deposition, the same official acknowledged that, at the time, he knew Gerald had been divorced and remarried and that Vita was a former wife.
Admittedly, a search of the County Clerk’s real property title and lien indices would not have disclosed Vita’s interest, though the civil actions index would have included her name and would have led the searcher to the fact that a judgment of divorce had been entered. Further inquiry would have revealed that Vita had the right to sole and exclusive possession of a residence, at Gerald’s expense, until one of the conditions (viz., remarriage) stipulated in the separation agreement should occur, if ever. Such an interest, obviously, is inconsistent with an unfettered right of ownership, possession and use by Gerald Talandis, the holder of title.
The bank contends that Vita’s contractual interest, as against her former husband, is not an estate in real property, that she had no title to the property and that the recording *635 statute (Real Property Law art 9) protects a subsequent purchaser in good faith and for a valuable consideration who first records its conveyance, citing Gibson v Thomas (180 NY 483) and Doyle v Lazarro (33 AD2d 142, affd 33 NY2d 981). However, in Gibson the Court noted that (at 489) “the plaintiff purchased the mortgage without knowledge, actual or constructive, of the release, [i.e., which removed the lien from the property] and with nothing to lead him to believe that the possession * * * was hostile to his mortgage”. These circumstances, clearly, distinguish Gibson from the case at bar. In Doyle, the subsequent purchaser for value, who recorded his later conveyance first, had no actual notice of an earlier unrecorded conveyance. Again, no other fact or circumstance was shown which could have alerted the buyer to the existence of another interest in the property, hostile to the apparent full and complete ownership of the seller.
The bank, with commendable candor, concedes that a mortgagee “may have a duty to ascertain the extent of the interest of a person who is in possession of the property who is not the mortgagor”, citing the venerable Williamson v Brown (15 NY 354), the font of many cases which, over the decades, have cascaded down to the present day carrying the same message: To generate a duty of inquiry, the presence of the possessor must be actual, open and visible. Most importantly, the presence must be inconsistent with the title of the apparent owner (Phelan v Brady, 119 NY 587; Holland v Brown, 140 NY 344). Mere reliance upon a chain of title search will not suffice where other facts and circumstances are present which, in the exercise of ordinary care, would have alerted the purchaser to the existence of other and prior legal or equitable interests discoverable with reasonable diligence.
In our view, the sole and exclusive use and occupancy of premises by a divorced wife, who pays no rent to the title-holding former husband, is sufficient to spark the duty of inquiry. These circumstances differ markedly from those in Schenectady Sav. Bank v Wertheim (237 App Div 311) where the bank prevailed over a widow, in possession of an apartment in a multiple residence. There, the widow could not demonstrate that her life estate would have been apparent to the eye of reasonable diligence. Here, the bank would have known that Vita Talandis had no legal claim upon the mortgagor which would have entitled her to rent-free exclusive possession, except for such obligations as may have beén incurred in a judgment of divorce. The bank, or its attorneys, also would have known *636 that a divorce is evidenced by a judgment of record. In sum, the bank was on notice of “such facts and circumstances as would put a prudent man upon his guard, and from which actual notice may be inferred and found.” (Holland v Brown, supra, at 347-348.)
The separation agreement, respecting Gerald’s duty to provide a home for Vita, may or may not create a “conveyance” which is entitled to recordation pursuant to section 290 (3) and section 291 of the Real Property Law (cf., Federal Deposit Ins. Co. v Malin, 802 F2d 12, 18). However that may be, the agreement transfers a valuable interest in realty and substantially lessens the incidents of ownership vested in Gerald Talandis. The issue, in any event, is not whether Vita Talandis was obliged to record her separation agreement in the chain of title index maintained by the County Clerk when the Nelson Road property was selected as her substitute residence. Rather, the crucial question is whether or not the bank, in granting the mortgage to Gerald Talandis on that property, was a bona fide purchaser for value.
The bank cannot satisfy that test if it knew of facts which would have alerted a reasonably prudent lender to the presence of an interest in that property which was hostile or inconsistent with the apparently unencumbered title of its prospective mortgagor. We conclude that the facts available to the bank would have moved a reasonably careful lender to inquire into the matter. Reasonable diligence would have disclosed that inconsistent interest. Accordingly, the bank may not rely upon its actual ignorance to justify its status as a good-faith purchaser for value (Governeur v Lynch, 2 Paige Ch 300; Phelan v Brady, supra; Holland v Brown, supra; Trustees of Union Coll. v Wheeler, 61 NY 88; City Bank v Hocke, 168 App Div 83; Mackenzie v Augimeri, 210 App Div 156; Nethaway v Bosch, 199 AD2d 654; Fekishazy v Thomson, 204 AD2d 959, lv denied 84 NY2d 812).
The motion is denied. The cross motion is granted.